615 A.2d 308

COMMONWEALTH of Pennsylvania, Appellant,

v.

Bruce A. KOHL, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Sharon Louise DANFORTH, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 22, 1991.

Decided Sept. 16, 1992.

Robert A. Graci, Chief Deputy Atty. Gen., Mary Benefield Seiverling, Anthony Sarcione, Deputy Attys. Gen., William H. Platt, Dist. Atty., Richard R. Tomsho, Deputy Dist. Atty., Douglas G. Reichley, Asst. Dist. Atty., and E. David Christine, Dist. Atty., Gregory D. Anthony, Douglas G. Reichley, Asst. Dist. Attys., for the Com. of Pa.

Mary Benefield Seiverling, Deputy Atty. Gen., for intervenor, Atty. Gen.

Howard N. Stark and Michael E. Brunnabend, Allentown, for Bruce A. Kohl.

David M. McGlaughlin, Philadelphia, for amicus curiae, Pa. Assoc. Crim. Defense Lawyers.

James A. Swetz, Stroudsburg, for appellee Sharon L. Danforth.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

The issue raised in these consolidated appeals is whether the chemical tests of breath, blood, or urine taken pursuant to the implied consent provision of the Motor Vehicle Code, 75 Pa.C.S.A. § 1547(a)(2), violate the federal and state constitutional prohibitions against unreasonable searches and seizures. We hold that the chemical tests authorized by § 1547(a)(2)

violate the Fourth Amendment of the United States Constitution and Article I, § 8 of the Pennsylvania Constitution.

*Nos. 183 and 188 Eastern District Appeal Docket 1990*

Appellee Bruce Kohl was convicted of two counts of homicide by vehicle while under the influence of alcohol, two counts of homicide by vehicle, two counts of driving while under the influence of alcohol or controlled substance, and the summary offenses of reckless driving and driving a vehicle at unsafe speed. His convictions arose from a one-vehicle collision that occurred on March 30, 1985, at approximately four o'clock a.m.

While proceeding around a sharp bend in the road, Mr. Kohl's vehicle left the road, struck a pole and a retaining wall. The accident resulted in the deaths of his two passengers, Jeffrey Greb and Mark Moser. Mr. Kohl was rendered unconscious.

A patrolman arrived at the scene of the accident. He observed fire in the engine compartment that was spreading through the vehicle. Mr. Kohl and the two passengers were removed from the vehicle before it was engulfed in flames.

Mr. Kohl was transported to a hospital for treatment. He had not regained consciousness by the time he was admitted to the hospital. An emergency room doctor ordered a blood test of Mr. Kohl for basic blood work. A police officer, who arrived at the hospital from the scene of the accident, requested that a blood sample be taken for analysis as to alcohol content. The police officers who investigated the accident did not observe any signs of alcohol consumption by Mr. Kohl or any other evidence that alcohol had been consumed prior to the accident.

The analysis of the blood sample requested by the police indicated a blood alcohol level of 0.15%. At the time that the blood sample was taken from his body, the police did not have a warrant to conduct the test. No charges had been filed against Mr. Kohl, nor was he placed under arrest. Mr. Kohl was arrested upon his release from the hospital on April 29, 1985.

In his pre-trial motions, Mr. Kohl sought to suppress the results of the blood test on the basis that the test violated his constitutional rights in that the police lacked probable cause to order the test and no consent was given for the test. The trial court denied the motion to suppress. Post-trial motions filed after his conviction were also denied by the trial court.

On appeal, the Superior Court held that the blood alcohol test performed on him violated his constitutional rights against unreasonable searches and seizures. 395 Pa.Super. 73, 576 A.2d 1049. The judgment of sentence was vacated and a new trial was ordered.

### No. 11 Eastern District Appeal Docket 1991

During the early morning hours of September 29, 1987, the Coolbaugh Township police received a call for help from the Byrd residence. The police who responded to the call encountered a one-vehicle accident within a few hundred yards of the residence. The driver's side of the vehicle was unoccupied. A male passenger with no apparent signs of life was found in the vehicle. The vehicle had collided with a tree stump and a utility pole laying on the side of the road.

At the Byrd residence, the investigating police officer met the Appellee, Sharon Louise Danforth, who identified herself as the driver of the vehicle involved in the accident. She told the officer that earlier she had met a man who told her that he lived near her. At his request, she had agreed to give him a ride to his house. During the ride, the man lunged at her, grabbed at her clothes, and tried to remove her blouse. She lost control of the vehicle while trying to defend herself by pushing him away. After the accident, she ran to the Byrd residence and called the police.

The police officer encouraged her to go to the hospital for treatment of her facial injuries. While she was receiving treatment at the hospital, the officer came by to ask more questions. She recounted the events that she had described earlier.

The officer never suspected that she was under the influence of alcohol. There was no odor of alcohol about her; her eyes were not bloodshot. She did not need any assistance while walking and was able to maintain her balance while standing.

■ Based solely on the severity of the accident and the occurrence of a fatality, the officer decided to request a blood sample be taken. The officer told her that he wanted to obtain a sample of her blood for analysis. She agreed to have a sample taken.

The officer did not inform her that the blood test was part of a criminal investigation. She was not asked to sign a consent form. A hospital laboratory technician drew blood from her and gave the sample to the officer. The police crime lab test results indicated a .21% blood alcohol level.

Ms. Danforth was arrested several weeks after the accident on October 16, 1987. She was charged with driving under the influence, homicide by vehicle, homicide by vehicle while driving under the influence and driving a vehicle at unsafe speed.

In her pre-trial motions, she moved to suppress the results of the blood test on the basis that the test violated her constitutional rights against unreasonable searches and seizures. The motion to suppress was denied. The trial court concluded that her consent to the test was implied under 75 Pa.C.S.A. § 1547(a)(2). The issue of whether she voluntarily consented was not addressed.

After a jury trial, she was convicted of driving under the influence. Post-trial motions were denied. The trial court sentenced her to a minimum term of imprisonment of forty-eight hours to a maximum term of one year.

The Superior Court vacated the judgment of sentence and remanded for a new trial. 395 Pa.Super. 1, 576 A.2d 1013. The court held that the blood test administered pursuant to § 1547(a)(2) was unconstitutional because the police officer lacked probable cause to believe she was under the influence. The court further held that her consent was invalid because

she had no notice of the criminal investigative purpose of the blood test.[1]

## I. CONSTITUTIONALITY OF § 1547(a)(2) UNDER THE FEDERAL CONSTITUTION

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause...." The Fourth Amendment applies to the States by virtue of the Fourteenth Amendment of the Federal Constitution. *New Jersey v. T.L.O.*, 469 U.S. 325, 334, 105 S.Ct. 733, 738, 83 L.Ed.2d 720 (1985).

■ The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State. *Schmerber v. State of California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). The security afforded to personal privacy against arbitrary intrusion by the police is "at the core of the Fourth Amendment" and "basic to a free society". *Schmerber*, 384 U.S. at 767, 86 S.Ct. at 1834, citing *Wolf v. People of State of Colorado*, 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949).

In *Schmerber*, the petitioner was convicted of driving an automobile while under the influence of intoxicating liquor. He was arrested at a hospital while receiving treatment for injuries suffered in an accident involving the automobile. A hospital physician drew a blood sample from the petitioner's body at the direction of a police officer. The chemical analysis of the sample indicated a percent by weight of alcohol in his blood at the time of the offense and was admitted into evidence at trial. The petitioner challenged the admissibility

1. We dismiss the Commonwealth's contention that the test results were admissible because Ms. Danforth voluntarily consented to the testing. The Superior Court properly concluded that the test results were not admissible because Ms. Danforth did not knowingly and voluntarily consent to the search.

of the evidence on the ground that the blood had been withdrawn despite his refusal to consent to the test.

The U.S. Supreme Court held that the administration of a blood test is a search within the meaning of the Fourth Amendment. In analyzing the petitioner's challenge to the admissibility of the evidence, the U.S. Supreme Court identified the issues as whether the police were justified in requiring the petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness. The U.S. Supreme Court stated that, " ... the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner". *Schmerber*, 384 U.S. at 768, 86 S.Ct. at 1834.

At the time the blood sample was taken, the petitioner had been arrested. The officer had arrived at the scene of the accident and observed that the petitioner's eyes were bloodshot, watery, and had a glassy appearance. The smell of liquor was detected on the petitioner's breath. The officer had noticed similar signs of petitioner's intoxication at the hospital two hours after the accident. The petitioner was then placed under arrest and given *Miranda* warnings. Probable cause for the officer to arrest the petitioner and charge him with driving an automobile while under the influence of intoxicating liquor had been established.

The lawful arrest in itself did not justify the warrantless search, however. Indeed, the Supreme Court stated that,

> The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

384 U.S. at 769–770, 86 S.Ct. at 1835.

The facts established probable cause to arrest the petitioner for driving while intoxicated and gave rise to an inference that

a blood test would disclose the presence of alcohol. The inquiry focused then on whether the police officer was permitted to draw the inference himself, or was required to obtain a warrant before the blood sample would be taken. Noting that search warrants are ordinarily required for searches of dwellings, the U.S. Supreme Court concluded that no less could be required where intrusions into the human body are concerned, absent an emergency.

Under the special facts of the case, the attempt to secure evidence of the blood alcohol content was found to be an appropriate incident to the petitioner's arrest. The U.S. Supreme Court indicated that the arresting officer might reasonably have believed that he was confronted with an emergency in which the delay necessary to obtain a warrant threatened the destruction of evidence. In holding that the record disclosed no violation of the petitioner's right to be free of unreasonable searches and seizures, the U.S. Supreme Court cautioned that,

It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

384 U.S. at 772, 86 S.Ct. at 1836.

The reasonableness of a search "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests". *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). The balance in most cases weighs in favor of the procedures described by the Warrant Clause of the Fourth Amendment. Except in limited circumstances, a search or seizure is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause. *Skinner v. Railway Labor Executives Association*, 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989).

■ The facts underlying the instant appeals do not meet the standard enunciated in *Schmerber*. Neither of the appellees was under arrest at the time the blood samples were drawn; nor did the circumstances establish probable cause to arrest the appellees. In both cases, the Commonwealth concedes that the police did not observe any signs or evidence indicating that the appellees were operating the vehicles under the influence of alcohol or a controlled substance.

The searches conducted in these cases were undertaken pursuant to the implied consent provision set forth in 75 Pa.C.S.A. § 1547(a)(2). Section 1547(a)(2) provides:

> § 1547. Chemical testing to determine amount of alcohol or controlled substance
>
> (a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
>
> \* \* \* \* \* \*
>
> (2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

Section 1547(a)(2) authorizes the seizure and search of an individual's blood based solely on the fact that the police officer has reasonable grounds to believe the individual was operating a vehicle that was involved in an accident in which death or an injury requiring medical treatment occurred. The statutory provision does not require any individualized suspicion of alcohol or drug use by the driver.

The Superior Court held that although the absence of a warrant requirement under § 1547(a)(2) does not render the tests unreasonable under the Fourth Amendment, a test administered solely on the basis of the existence of the condi-

tions set by § 1547(a)(2) is an unreasonable search prohibited by the Fourth Amendment. We agree that a search conducted under the auspices of § 1547(a)(2), without any independent facts to establish probable cause to believe that the operator of the vehicle was driving under the influence, violates the Fourth Amendment.

The Commonwealth contends that the search or seizure was not unreasonable because it fell within the "special needs" exception to the Fourth Amendment developed by the U.S. Supreme Court in a limited number of cases. The special needs exception to the probable cause and warrant requirements of the Fourth Amendment has been recognized in certain cases when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Skinner*, supra, 489 U.S. at 619, 109 S.Ct. at 1414, citing *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 3167, 97 L.Ed.2d 709 (1987).

In *Skinner*, the U.S. Supreme Court upheld regulations promulgated by the Federal Railroad Administration that mandated blood and urine tests of employees who were involved in certain train accidents and who violated certain safety rules. Noting that employees governed by the regulations had long been the principal focus of regulatory concern, the U.S. Supreme Court concluded that the restrictions imposed on the employees were minimal given the employment context in which the testing was done. The purpose of the toxicological testing required by the regulations was found to be preventative in nature, rather than intended to assist in the criminal prosecution of employees.

The Government's interest in regulating the conduct of railroad employees to ensure safety was the primary focus of the regulations, rather than the Government's interest in enforcing its laws through criminal prosecutions. As such, the Government's interest in regulating the employees' conduct presented a special need beyond normal law enforcement that justified departure from the usual warrant and probable cause requirements. No balancing test of the governmental and privacy interests to determine the need for a warrant and

probable cause may be undertaken, however, when the governmental interest to be advanced is the normal need for law enforcement.

The Commonwealth argues that the special needs exception is applicable in the instant cases because it has a vital interest in ensuring that only those qualified are permitted to operate motor vehicles and in removing drunk drivers from the highways. The special needs exception is not applicable in the context of these cases. As the Superior Court noted, the purpose underlying § 1547(a)(2) is to enable the police to obtain evidence of intoxication or drug use to be utilized in criminal proceedings. 75 Pa.C.S.A. § 1547(c). The gravity of the problem of alcohol related traffic accidents was addressed in *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339 (1983). No matter how compelling, however, the Commonwealth's interest in securing evidence that a driver is operating a vehicle under the influence of alcohol or drugs does not evince a special need that would justify departure from the probable cause requirements of the Fourth Amendment.

Section 1547(a)(2) authorizes unreasonable searches and seizures in violation of the Fourth Amendment. No probable cause existed in these cases to believe that the individuals were operating their vehicles under the influence of alcohol or drugs. The results of the blood tests were improperly admitted as evidence in the trials of the appellees.

## II. CONSTITUTIONALITY OF § 1547(a)(2) UNDER ARTICLE I, SECTION 8 OF THE PENNSYLVANIA CONSTITUTION

The constitutional protection against unreasonable searches and seizures afforded by Article I, section 8 of the Pennsylvania Constitution was in existence more than a decade before the adoption of the Federal Constitution, and fifteen years prior to the promulgation of the Fourth Amendment. *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983). Article I, section 8 states:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures,

and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

 Article I, section 8 has an identity and vitality that is separate and distinct from that of the Fourth Amendment. The decisions of the U.S. Supreme Court are not dispositive of questions regarding the rights guaranteed to citizens of the Commonwealth under the Pennsylvania Constitution. A state may provide through its constitution a basis for the rights and liberties of its citizens independent from that provided by the Federal Constitution.

In *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), we stated:

Here in Pennsylvania, we have stated with increasing frequency that it is both important and necessary that we undertake an independent analysis of the Pennsylvania Constitution each time a provision of that fundamental document is implicated. Although we may accord weight to federal decisions where they "are found to be logically persuasive and well reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees," . . . we are free to reject the conclusion of the U.S. Supreme Court so long as we remain faithful to the minimum guarantees established by the U.S. Constitution.

526 Pa. at 389–390, 586 A.2d at 895–896 (citation omitted.) ". . . [W]e are not bound to interpret the two provisions [of the state and federal constitutions] as if they were mirror images, even where the text is similar or identical." 526 Pa. at 391, 586 A.2d at 896.

While we have held that the searches authorized by § 1547(a)(2) violate the Federal Constitution, the constitutionality of the searches under Article I, section 8 must be addressed also. We conclude that the searches are impermissible under the Pennsylvania Constitution. The analysis underlying our holding is separate and independent from the analysis undertaken under the Federal Constitution. Therefore, our holding under the Pennsylvania Constitution would

remain unchanged should the U.S. Supreme Court resolve the issue contrary to our analysis of the federal constitutional question.

■ There is a presumption that lawfully enacted legislation is constitutional. Should the constitutionality of legislation be challenged, the challenger must meet the burden of rebutting the presumption of constitutionality by a clear, palpable, and plain demonstration that the statute violates a constitutional provision. *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302 (1984); *Commonwealth v. Mikulan,* 504 Pa. 244, 470 A.2d 1339 (1983).

■ The administration of a blood test is a search within the meaning of Article I, section 8 if performed by an agent of, or at the direction of the government. *Commonwealth, Department of Transportation v. McFarren,* 514 Pa. 411, 417, 525 A.2d 1185, 1188 (1987). Generally, a search or seizure is not reasonable unless it is conducted pursuant to a search warrant issued by a magistrate upon a showing of probable cause. Probable cause exists when an officer has knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man to believe that the person seized has committed a crime.

■ The implied consent provisions of § 1547(a)(1) and § 1547(a)(2) dispense with the need to obtain a warrant. As the U.S. Supreme Court held in *Schmerber,* supra, the importance of collecting blood samples in circumstances establishing probable cause to believe that an operator was driving under the influence justified waiving the warrant requirement under the "exigent circumstances" exception to the Fourth Amendment warrant requirement. We agree that in instances in which probable cause has been established, the absence of a warrant requirement under the implied consent provisions does not render the blood, breath, and urine tests unreasonable under Article I, § 8 of the Pennsylvania Constitution due to time's dissipating effect on the evidence.

The Appellees' challenge to the constitutionality of § 1547(a)(2) must be sustained, however, because that provision impermissibly dispenses with the probable cause requirement as well. It is instructive on this point to examine the difference between § 1547(a)(1) and § 1547(a)(2). Under subsection (a)(1) of the implied consent provision, the officer must have reasonable grounds to believe the person to be tested has been driving while under the influence of alcohol or a controlled substance. "Reasonable grounds" is not defined in the statute, but has been construed to mean probable cause by the Superior Court in *Commonwealth v. Quarles*, 229 Pa.Super. 363, 324 A.2d 452 (1974) (plurality opinion).

In *Quarles*, the Superior Court concluded that the constitutional basis for a blood, urine, or chemical test under § 1547(a)(1) was the existence of probable cause to believe that the suspect had been driving under the influence of alcohol or a controlled substance. The Superior Court specifically rejected an interpretation of the provision that would premise the constitutionality of the provision on the driver's implied consent alone. In adopting the construction of "reasonable grounds" to mean "probable cause", the Superior Court upheld § 1547(a)(1) as constitutional. The construction applied to § 1547(a)(1) was consistent with the basic principle of statutory construction that the Legislature does not intend to violate the federal or state constitutions. 1 Pa.C.S. § 1922(3).

Under § 1547(a)(2), however, the officer must only have reasonable grounds to believe that the operator of the vehicle was involved in an accident involving a fatality or in which treatment at a medical facility was required. No knowledge of sufficient facts and circumstances to warrant a belief that the operator has committed a crime is required. A search or seizure conducted under circumstances in which there is no probable cause to warrant a belief that a crime has been committed is constitutionally impermissible. Indeed, if the police officers had observed any signs of intoxication, the blood tests would have been authorized by 75 Pa.C.S.A. § 1547(a)(1).

168

The tests authorized by § 1547(a)(2) violate Article I, § 8 of the Pennsylvania Constitution. The Commonwealth does have a compelling interest in protecting its citizens from the dangers posed by drunk drivers. The criminalization of such conduct and the stringent punishment imposed for violation of the laws proscribing the conduct are permissible legislative responses to promote the Commonwealth's interest. The protections afforded to individuals under the Pennsylvania Constitution may not be diminished, however, by the Commonwealth's vigilance in promoting that interest.

The Commonwealth contends that the judgments of sentence should not be vacated if, as this Court has held, § 1547(a)(2) is declared unconstitutional. We must reject that contention. As we stated in *Commonwealth v. Brown*, 494 Pa. 380, 431 A.2d 905, 907 (1981),

> The principle that a court does not have power to enforce a law which is no longer valid but rather must apply the law as it exists at the time of its decision has been recognized since as early as *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801).

In *Schooner Peggy*, Justice Marshall wrote:

> "But if, subsequent to the judgment and before the decision of the appellate court a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.... In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside."

The judgments of sentence must be vacated in the instant cases and new trials must be ordered because the appellees have successfully challenged the Commonwealth's use of evidence that was illegally obtained under § 1547(a)(2). "To do otherwise in criminal proceedings is to impose an unwarranted hardship on defendants which affects their most fundamental rights of life and liberty, while serving no legitimate societal interest in applying an offensive law no longer valid." *Commonwealth v. Brown*, 494 Pa. at 385–386, 431 A.2d at 908.

The orders of the Superior Court vacating the judgments of sentence and granting new trials to the Appellees, Bruce A. Kohl and Sharon Louise Danforth, are affirmed.

McDERMOTT, J., did not participate in the decision of this case.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

PAPADAKOS, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent. I would uphold the constitutionality of the "implied consent law", 75 Pa.C.S.A. § 1547(a)(2), and would reverse the orders of the Superior Court vacating the judgments of sentence and granting new trials to the appellees. The majority concludes that 75 Pa.C.S.A. § 1547(a)(2) is unconstitutional under the Fourth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution. As a result, the majority holds that toxicological (blood, urine and breath) tests cannot be administered without probable cause to suspect that a driver is under the influence of alcohol or drugs. Aside from the fact that almost 50% of all fatal accidents involve alcohol, which I think is a sufficient basis to test all drivers involved in serious accidents, this statute applies to only those accidents involving the occurrence of a serious injury or fatality. Oftentimes, as in the *Commonwealth v. Kohl*, 395 Pa.Super. 73, 576 A.2d 1049 (1990) case, the driver of an automobile will be rendered unconscious as a result of the accident, precluding the opportunity to observe behavior and to obtain the probable cause that the majority finds imperative. Should the inability of police officers to conduct a sufficient investigation in these circumstances immunize these drivers from prosecution for drunk driving? The majority believes that it should. I respectfully disagree. I believe that the magnitude of the drunk driving problem mandates an exception to the probable cause requirement and that a warrantless, suspicionless search is justified under these circumstances.

I begin by noting that legislation will not be declared unconstitutional unless it clearly, palpably and plainly violates the constitution. *Commonwealth v. Mikulan,* 504 Pa. 244, 247, 470 A.2d 1339, 1340 (1983). Hence, I begin this analysis with the strong presumption of constitutionality. *Id.*

The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated...." Article I, Section 8 of the Pennsylvania Constitution provides that "[t]he people shall be secure in their persons, houses, papers and possessions from *unreasonable* searches and seizures...." The touchstone of these provisions is *reasonableness.* In order to determine the reasonableness of a particular search or seizure we must balance the intrusion on the individual against the government's promotion of legitimate interests. *Skinner v. Railway Labor Executives Ass'n,* 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639, 661 (1989); *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667–68 (1979); *Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177 (1992). *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987) (plurality).

That the state's interest in maintaining highway safety by eradicating the drunk driving problem is compelling is beyond dispute. The 1988 Traffic Accident Facts and Statistics Report published by the Center for Highway Safety of the Pennsylvania Department of Transportation reveals that in 1990, there were 16,382 alcohol related traffic accidents; almost 50% of fatal accidents involved alcohol; 737 people were killed in 670 alcohol related fatal accidents; 17,216 people were injured in 11,170 alcohol related accidents. The economic loss due to alcohol related accidents in Pennsylvania was $1,599,550,756.00.

Conversely, the degree of intrusion on the individual is minimal. First of all, all persons by virtue of driving have impliedly consented to certain restrictions. Secondly, the intrusion occasioned by a blood, breath or urine test is not significant, since these tests can be conducted with a minimum

of inconvenience or embarrassment. *Skinner v. Railway Labor Executives Ass'n,* 489 U.S. at 624–68, 109 S.Ct. at 1417–1418, 103 L.Ed.2d at 665–66; *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

This statute furthers the public interest by deterring chemically impaired driving, facilitating the prosecution of chemically impaired drivers, and insuring that police focus their attention on getting prompt medical attention for those who are injured, rather than concentrating on a preliminary investigation.

In sum, the State's interest in maintaining highway safety in general, and in preventing drunk driving specifically, is compelling; the degree of intrusion upon the individual is minimal; hence the balance weighs in favor of the State's program, and a warrantless, suspicionless search is justified under the circumstances.

In *Skinner v. Railway Labor Executives Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), the United States Supreme Court upheld against a Fourth Amendment attack, a regulatory scheme similar to the Pennsylvania statute. In response to a significant number of alcohol and drug related train accidents, the Federal Railroad Administration promulgated regulations mandating blood and urine tests for railroad employees involved in major train accidents involving death, serious environmental problems, or extensive property damage.

The Court recognized exceptions to the general warrant/probable cause requirement when "special needs," beyond the normal need for law enforcement, make the warrant and probable cause requirements impracticable. *Skinner v. Railway Labor Executives Ass'n,* 489 U.S. at 619, 109 S.Ct. at 1414, 103 L.Ed.2d at 661. The Court went on to state that "when faced with such special needs, we have not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable cause requirements in the particular context." *Skinner,* 489 U.S. at 619, 109 S.Ct. at 1414, 103 L.Ed.2d at 661. In assessing the practicality of the

probable cause requirement,[1] the Court stated that "[i]n limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." *Id.* at 624, 109 S.Ct. at 1417, 103 L.Ed.2d at 664. After weighing the parties' respective interests, the Court concluded that a requirement of particularized suspicion of drug or alcohol use would seriously impede the ability to obtain this information, despite the compelling need, and that "it would be unrealistic, and inimical to the Government's goal of ensuring safety in rail transportation, to require a showing of individualized suspicion in these circumstances." *Id.* at 631, 109 S.Ct. at 1420, 103 L.Ed.2d at 669.

Subsequently, the United States Supreme Court stated, in *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 1390, 103 L.Ed.2d 685, 702 (1989), that "our decision in *Railway Executives [Skinner]* reaffirms the longstanding principle that neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance."

I believe that the rationale of *Skinner* should extend to the cases *sub judice.* The Pennsylvania statute, like the federal regulations, does not require toxicological testing as a condition of the mere operation of a vehicle, but is triggered only upon the occurrence of a stated event. In these cases, as in *Skinner,* the Government's interest in regulating conduct to ensure safety creates a "special need" beyond normal law enforcement that justifies departure from the usual warrant and probable cause requirements. Additionally, in both instances, the public interest in eradicating drunk driving cannot adequately be met by more traditional law enforcement procedures.

---

1. The majority concedes that, where probable cause has been established, the exigency of the situation renders a *warrantless* search reasonable.

The cases at issue involve serious accidents where a driver, passenger, or pedestrian requires medical attention or is killed. The exigency of the situation requires investigating officers to forgo the usual investigative techniques. When an individual is dead or in need of immediate medical attention the usual opportunity to observe behavior is not available. Treatment of the individual becomes paramount. Additionally, when drugs are involved, there is usually no odor present, therefore, without alternative methods of detection, drug use will go undetected if behavior cannot be observed. The majority, by finding the Pennsylvania statute to be unconstitutional allows the most serious and egregious cases to go undetected because of the inability of investigating officers to conduct an investigation. Therefore, I believe the present situation involves an instance where a compelling state interest would be placed in jeopardy by a requirement of individualized suspicion. Hence, I find the statute constitutional under the Fourth Amendment.

In Pennsylvania, this Court has also adhered to the belief that a finding of reasonableness may be predicated on less than probable cause, and has expressly approved the balancing of interests approach for determining reasonableness under Article I, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177 (1992); *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987) (plurality). Thus, we upheld the systematic stopping of vehicles at roadblocks without any individualized suspicion because the governmental interest in maintaining safe highways outweighed the individual's privacy interests under the circumstances. I find the same to be true of the cases *sub judice* and would uphold the constitutionality of 75 Pa.C.S.A. § 1547(a)(2) under the Pennsylvania Constitution.

In conclusion, I believe that a balancing test is appropriate to determine the reasonableness of Pa.C.S.A. § 1547(a)(2) under both the Federal and State Constitutions, and that the balance weighs in favor of the government's interests in these circumstances. Hence, I believe that Pa.C.S.A. § 1547(a)(2) satisfies the constitutional requirements of both the Fourth

Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Accordingly, I would reverse the orders of the Superior Court.

PAPADAKOS, J., joins this dissenting opinion.

PAPADAKOS, Justice, dissenting.

I dissent from the majority on the two grounds considered below.

I. Federal Law and the Public Safety Exception.

The extension of *Skinner v. Railway Labor Executives Association,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), to the facts of the instant case is fully warranted. Driving an automobile in any jurisdiction automatically triggers regulatory concerns, in addition to possible criminal prosecution. The state has created an elaborate administrative system designed to promote public safety on the roads. Drivers are licensed and may be required to wear lenses and even pass subsequent driver's tests or undergo schooling because of age or gravity of violations; the state builds roads and polices them with elaborate schemes and outlays of public funds; and the state promulgates extensive regulations for automobiles and trucks. Most of this scheme is preventive by nature in the same way that administrative searches aim at forestalling events which will harm the public. While I remain sensitive to traditional requirements of probable cause in search and seizure cases, I fail to comprehend the majority's refusal to recognize the same "special governmental needs" that also have been woven into federal constitutional precedents. *Camara v. Superior Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

Post *See* cases, in fact, have gone further in holding that warrantless, non-exigent, and non-consensual administrative searches of closely regulated businesses are permitted where the regulations further a substantial interest (protection of the health and safety of workers) and are necessary to further the regulatory scheme. *New York v. Burger,* 482 U.S. 691, 107

S.Ct. 2636, 96 L.Ed.2d 601 (1987). Of course these cases deal with commercial enterprises; but the underlying principle in their holdings is the necessity of protecting the public's health and safety pursuant to a regulatory system of prevention. Moreover, although such searches implicate the Fourth Amendment by intruding on privacy and by leading to the discovery of evidence that can be used in a criminal prosecution, the United States Supreme Court, nevertheless, has permitted a relaxed applicability of the warrant requirement in this context.

Suggestions to the contrary that traditional doctrine somehow allows of no exception where criminal prosecution could occur misreads federal case law. In *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), for example, warrantless inspections of gun dealers were permissible because illegal weapons could be removed quickly, even though the errant dealer also could be subjected to criminal sanctions based on the evidence of illegal weapons seized in his shop. Unless the majority is prepared to deal with such a challenge to the very heart of their opinion, the proposed holding will remain unsatisfactory.

It is equally unconvincing to conjure up scary visions of sabotaging the conventional law of warrants. I call only for a sensible, reasonable and quite limited extension of a warrantless search in the context of a legislatively-enacted scheme designed to protect the public on the Commonwealth's roads and nothing more.

## II. Independent State Grounds Argument

I am dismayed also at the form of analysis of the Pennsylvania Constitution employed by the majority. It has been my impression for the past year that we had set forth a dramatically new way of assessing state constitutional issues, especially Article I, section 8 cases predicated on independent state grounds. *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). I take the central message of *Edmunds* to be that mere assertions of independent state constitutional grounds are not acceptable: no longer can the state constitution be viewed as an all-purpose surrogate for informed analysis, to be

taken from the shelf and opened like a can of beans to feed those who periodically hunger for answers in that document. Instead, *Edmunds* mandated a structured analytical form to be used in applicable cases. I remind my brethren of the clear language of that case:

> The recent focus on the "New Federalism" has emphasized the importance of state constitutions with respect to individual rights and criminal procedure. As such, we find it important to set forth certain factors to be briefed and analyzed by litigants in each case hereafter implicating a provision of the Pennsylvania constitution. The decision of the United States Supreme Court in *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), now requires us to make a "plain statement" of the adequate and independent state grounds upon which we rely, in order to avoid any doubt that we have rested our decision squarely upon Pennsylvania jurisprudence. Accordingly, as a general rule it is important that litigants brief and analyze at least the following four factors:
>
> 1) text of the Pennsylvania constitutional provision;
>
> 2) history of the provision, including Pennsylvania case-law;
>
> 3) related case-law from other states;
>
> 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.
>
> Depending upon the particular issue presented, an examination of related federal precedent may be useful as part of the state constitutional analysis, not as binding authority, but as one form of guidance. However, it is essential that courts in Pennsylvania undertake an independent analysis under the Pennsylvania Constitution.

526 Pa. at 390–391, 586 A.2d 887 (footnotes omitted).

While it may be pardonable to omit specific reference to *Edmunds,* there is insufficient reason to ignore its substance. The majority opinion does cite a few of our cases on general constitutional issues involving statutory interpretation, but I find little beyond conclusory text on the specific issue posed

by this case. Certainly, no plain reading of the majority's argument relating to independent state grounds brings it within the orbit of *Edmunds*. Additionally, I perceive such a close interplay between federal law and state law in the opinion that I cannot believe *Michigan v. Long* itself could be satisfied to accomplish the very purpose of the majority opinion. Contrary to the teaching of *Edmunds*, it appears that the federal law is much more than "one form of guidance."

I believe I am quite correct in stating that we decided *Edmunds* in order to guard against precisely this kind of opinion. Even assuming arguendo that the majority could make its case on independent state grounds (which I do not believe), there is no evidence they have done so here. I take very little comfort in the fact that although we adopted a significant and path-breaking analysis one year ago, neither the courts below nor the majority opinion herein have shown any recognition of its existence as precedent. And still we wonder why our courts often are criticized for being like little puppies who chase their own tails rather than run forward.