J-A04003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THOMAS S. KEPNER | |
| Appellant | No. 949 MDA 2017 |

Appeal from the Judgment of Sentence imposed May 16, 2017
In the Court of Common Pleas of Cumberland County
Criminal Division at No: CP-21-CR-0000573-2016

BEFORE:  STABILE, NICHOLS, AND RANSOM,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 23, 2018**

Appellant, Thomas S. Kepner, appeals from the judgment of sentence imposed on May 16, 2017 in the Court of Common Pleas of Cumberland County.  Relying on **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016),[1] Appellant argues that the trial court erred in not suppressing the results of his warrantless blood test.  We disagree.  Accordingly, we affirm.

The underlying facts are not in dispute.  As developed at the suppression hearing, on October 25, 2015, Officer Robert Powers of the Upper Allen Township Department responded to Appellant's residence following a

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **Birchfield** held that the Fourth Amendment to the United States Constitution does not permit warrantless blood tests incident to arrests for drunk driving and that a state may not criminalize a motorist's refusal to comply with a demand to submit to blood testing.  **Birchfield**, 136 S. Ct. at 2185-86.

complaint of a reckless driver. The report contained a detailed description of the vehicle and a registration number that matched Appellant's vehicle. Appellant admitted to operating his vehicle earlier that night. In his interaction with Appellant, the officer detected a strong odor of an alcoholic beverage coming from his breath. Appellant agreed to submit to standard field sobriety tests, which he failed. Accordingly, the officer placed Appellant under arrest for suspicion of driving under the influence of alcohol.

Next, the officer placed Appellant in the back seat of his patrol vehicle and asked him if he would submit to a legal blood draw to determine his blood alcohol content. Appellant agreed. Officer Powers did not provide the implied consent warnings (DL-26 Form) or otherwise discuss with him any enhanced penalties he might be exposed to for refusing to a blood draw. Officer Powers indicated that he did not address the form with Appellant because Appellant agreed to the blood draw.

Appellant also testified at the suppression hearing. He essentially testified that he consented to the blood draw because he knew that if he refused it, he would have received harsher penalties.

The suppression court denied Appellant's motion, noting that Appellant "consented voluntarily to the blood draw, without a real or perceived threat of increased sanctions for refusal[.]" Suppression Court Order, 2/3/17.

On April 13, 2017, following a bench trial, Appellant was found guilty of two counts of driving under the influence (general impairment, and high rate of alcohol). On May 16, 2017, the trial court sentenced Appellant to term of

incarceration of not less than 48 hours nor more than six months, with automatic release upon service of his minimum sentence. This appeal followed.

On appeal, Appellant, relying on **Birchfiled**, argues that Officer Powers was required to obtain a warrant to compel Appellant to submit to blood testing. Moreover, Appellant argues that his consent to the blood draw was not voluntary, but coerced based on his own knowledge of DUI law.

We review a denial of a motion to suppress based on the following standard:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is de novo. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

**Commonwealth v. Singleton**, 169 A.3d 79, 82 (Pa. Super. 2017) (citations omitted).

> "The Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." **Commonwealth v. McAdoo**, 46 A.3d 781, 784 (Pa. Super. 2012). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." **Commonwealth v. Strickler**, 563 Pa. 47, 757 A.2d 884, 888 (2000). "Exceptions to the warrant requirement include the consent exception, the plain view

exception, the inventory search exception, the exigent circumstances exception, the automobile exception . . ., the stop and frisk exception, and the search incident to arrest exception." ***Commonwealth v. Dunnavant***, 63 A.3d 1252, 1257 n.3 (Pa. Super. 2013).

The "administration of a blood test . . . performed by an agent of, or at the direction of the government" constitutes a search under both the United States and Pennsylvania Constitutions. ***Commonwealth v. Kohl***, 532 Pa. 152, 615 A.2d 308, 315 (1992); ***Schmerber v. California***, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Since the blood test in the case at bar was performed without a warrant, the search is presumptively unreasonable "and therefore constitutionally impermissible, unless an established exception applies." ***Strickler***, 757 A.2d at 888.

***Commonwealth v. Evans***, 153 A.3d 323, 327-28 (Pa. Super. 2016).

"One such exception is consent, voluntarily given." ***Strickler***, 757 A.2d 888 (citation omitted). Under the Fourth Amendment, where an encounter between law enforcement is lawful, voluntariness of consent to a search becomes the exclusive focus. ***Id.***

As noted above, Appellant contends that his consent was not voluntary because it was made with the knowledge of increased penalties for refusal. The same coercion measure was fatal to ***Birchfield***, according to Appellant. In support, Appellant directs our attention to the ancient maxim that everyone is presumed to know the law and ignorance of the law excuses no one. Appellant's argument is meritless.

First, at the time of Appellant's arrest, the law was that the police must inform an arrestee of the consequences of refusal. ***Pa. Dep't of Transport. v. O'Connell***, 555 A.2d 873, 877 (Pa. 1989). Absent a proper warning, there

- 4 -

could be no consequences for refusal. *Id*. Thus, even if we were to accept Appellant's "presumptive knowledge" argument, his claim would fail.

Second, Appellant's reliance on **Birchfield** is inapposite. "**Birchfield** makes plain that the police may not **threaten** enhanced punishment for refusing a blood test in order to obtain consent, [**Birchfield**,] 136 S.Ct. at 2186; whether that enhanced punishment is (or can be) ultimately imposed is irrelevant to the question whether the consent was valid." **Commonwealth v. Ennels**, 167 A.3d 716, 724 (Pa. Super. 2017) (emphasis in original). Thus, the mere existence of legislation that imposed criminal penalties for refusal, absent an actual threat, does not amount to coercion or invalidate the consent given.

Ultimately, therefore, the instant appeal hinges on whether Appellant validly consented to the blood draw. As explained below, we conclude Appellant validly consented to the blood draw.

Our Supreme Court has applied the following standard to determine whether an individual has validly consented to a chemical test:

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the

- 5 -

circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

*Commonwealth v. Smith*, 77 A.3d 562, 573 (2013) (internal citations and quotation marks omitted).

Of all the circumstances surrounding his consent to the blood test, Appellant's challenge is limited to the effects of his professed knowledge of DUI laws. In his view, because he knew enhanced penalties would apply if he were to refuse a blood draw, he did not really have a choice other than agreeing to the test. His consent, in other words, was coerced. We disagree.

First, the trial court did not find Appellant's alleged knowledge of DUI laws or consequences resulting from refusal to be credible.[2] N.T. Suppression Hearing, 2/2/17 at 10-11; Trial Court Opinion, 9/5/17, at 3-5.

Second, a review of the exchange between the officer and Appellant shows no evidence, whether by words or conduct, suggesting coercion by the officer. Similarly, there is no indication of any other circumstance surrounding the interaction that would suggest Appellant's free will was overborne. To the extent Appellant's knowledge of the law about refusal might have played a

_____

[2] Appellant first testified that he knew about the enhanced penalties for refusal because his lawyer told him about them in 2002 or 2003. When confronted with the fact the enhanced penalties were introduced in 2004, he then shifted to another source of his knowledge of DUI laws: his experience as bartender. Later, however, he opted for another explanation: "[I]t is common knowledge" that refusal to submit to a test is met with harsher penalties. *See* N.T. Suppression Hearing, 2/2/17, at 8.

- 6 -

role in consenting to the test, again, there is nothing in the record that would suggest that such knowledge overborne his will.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/23/18