JUSTICE MUNDY, Concurring
I join Part II(A) of the Opinion regarding the resolution of the factual consent issue in full and agree the Superior Court misapplied its standard and scope of review. See Op. at 377-78. I further agree with a significant portion of the lead opinion's reasoning as well as its mandate to remand to the trial court to give the Commonwealth the opportunity to introduce the arrest warrant to ascertain whether it provided a basis for the search of Appellants' home. I write separately to explain how my analysis differs from the lead opinion's.
As the lead opinion observes, this case presents a purported conflict between two cases from the Supreme Court of the United States, Payton v. New York , 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and Steagald v. United States , 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). In my view, the required inquiry is better served by analyzing these cases in reverse order, as I believe doing so reveals that there is not as much tension between the two cases as is being suggested.
The lead opinion observes that in Steagald , the Court held a search warrant is required to search the home of a third-party for an arrestee, absent consent, exigent circumstances, hot pursuit, or some other well-established exception.[1] It is conceded here that Appellants were not the named arrestee in Agent Finnegan's warrant, there was a search conducted of Appellants' home without a search warrant, and the Commonwealth does not argue that any traditional exception to the warrant requirement applies. I fully agree with the lead opinion that " Steagald reflects a binding, majority holding from the United States Supreme Court, which directly addresses the third-party interest jeopardized by home entries of this sort."
*407 OAJC at 399. Therefore, I would synthesize the two cases as follows: because law enforcement conducted a warrantless search of Appellants' home, Steagald requires that Appellants' suppression motion be granted, unless the Commonwealth can overcome Steagald by showing that Payton applies. This gives full effect to both of the Supreme Court's cases.
I now turn to how the Commonwealth can satisfy Payton to overcome Steagald . I agree with the Tenth Circuit that the best synthesis of Payton 's requirements is that for an arrest warrant itself to permit an entry into a home, "officers must have a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry." United States v. Gay , 240 F.3d 1222, 1226 (10th Cir. 2001) (citation omitted).[2] I further agree that "reasonable belief" must mean probable cause. See OAJC at 392-95. In addition to the lead opinion's analysis, I note that this Court, for other search and seizure purposes, has held that "reasonable grounds" in our own statutes means probable cause. Commonwealth v. Kohl , 532 Pa. 152, 615 A.2d 308, 313 (1992) (addressing now-repealed 75 Pa.C.S. § 1547(a)(2) ).
My principal point of disagreement with the lead opinion is over its treatment of Payton as an intermediate category between pure dicta and a binding rule. See OAJC at 399-400. In this regard, I share Justice Dougherty's views that "the [Supreme] Court has since relied repeatedly on [ Payton 's] language to resolve the execution of arrest and search warrants." Concurring and Dissenting Op. at 409. In addition to the cases cited by Justice Dougherty, I note that Steagald itself used the language in Payton as part of the basis for its rule. See Steagald , 451 U.S. at 221, 101 S.Ct. 1642 (citing Payton , 445 U.S. at 602-03, 100 S.Ct. 1371 ) (stating, in discussing the government's concerns about obtaining a search warrant, "the situations in which a search warrant will be necessary are few. As noted in Payton [,] an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest."). I therefore agree, consistent with the views of the Third Circuit, that the language in Payton has "evolved into a tenet of Fourth Amendment jurisprudence[.]" United States v. Vasquez-Algarin , 821 F.3d 467, 472 (3d Cir. 2016). Therefore, I view Payton as its own constitutional rule that requires: (1) a valid arrest warrant; (2) probable cause that the home in question is the arrestee's residence; and (3) probable cause that the arrestee will be found at that home in the moment the search is effectuated.
Turning back to this case, I observe that what is crucial in any Fourth Amendment analysis is what is known to law enforcement ex ante under the totality of the circumstances. We do not analyze these *408 issues through the lens of what police did or did not discover from the search ex post . Stated another way, the Fourth Amendment does not reward law enforcement for being right nor does it penalize officers for being wrong. Commonwealth v. Carter , 105 A.3d 765, 769 n.4 (Pa. Super. 2014) (en banc), appeal denied , 632 Pa. 667, 117 A.3d 295 (2015).
As the lead opinion notes, the Commonwealth did not produce the arrest warrant for Moreno at the suppression hearing. The only evidence in the record is Agent Finnegan's testimony. On the residence prong of Payton , my review of the suppression hearing transcript reveals that Agent Finnegan's testimony was at times contradictory. At one time, he testified that he believed Moreno's family lived there, which suggests Agent Finnegan knew that this home belonged to someone else and Moreno could just be staying there. N.T., 2/20/15, at 12, 23-24. At another point, Agent Finnegan testified he believed this house to be Moreno's actual residence. Id. at 14. When the trial court questioned him directly, Agent Finnegan stated both beliefs in the same sentence. See id. at 38 (telling the trial court he had "[t]he belief that ... this was [Moreno's] legal residence and the belief that he very well may have been staying there.") (emphasis added).
However, even assuming that Agent Finnegan's information gave rise to probable cause that Moreno's "residence" was 4745 North Second Street, that is not enough under Payton . As noted above, Payton requires probable cause to believe that 4745 North Second Street was Moreno's residence and that Moreno would be physically present there when the officers effectuated their entry. Gay , 240 F.3d at 1226. From my review of the transcript, the Commonwealth did not produce any evidence that Moreno would be physically present when the officer entered Appellants' home.[3] Therefore, the Commonwealth did not ultimately meet its burden.
This testimony highlights what the lead opinion titles the "uncertain residence problem." OAJC at 390. Although I agree with the lead opinion's recitation of Payton 's framework, I observe that it places a high burden on law enforcement officers in executing valid arrest warrants. As the lead opinion notes, instead of providing any guideposts for how Payton should be applied, the Court simply "took the question of residence for granted, and did not consider the possibility of error in that determination." Id. at 390 n.10.
In addition to the possibility of error in determining the location of an arrestee's residence, I observe that the Payton Court did not contemplate that its rule would have to be applied to fugitives. The two consolidated cases in Payton involved individuals who had a knowable fixed residence, one being a house, and the other being an apartment. Payton , 445 U.S. at 576-78, 100 S.Ct. 1371. The pitfalls of applying Payton to the "uncertain residence problem" are magnified when law enforcement and courts are tasked with applying it to a class of persons that by definition has no set residence in the first place, such as Moreno in this case. I believe the Supreme Court of the United States should give courts and law enforcement more detailed guidance in this area.
*409 This leaves the arrest warrant itself. I agree with the lead opinion that "[i]t remains possible that the contents of that warrant reflected the magistrate's determination of probable cause to search [Appellants'] home, in which case the challenged entry was lawful." OAJC at 405-06. Consistent with the lead opinion's view, to always require two physical pieces of paper would indeed elevate form over substance. Id. at 403 n.20. Therefore, I have no objection to allowing the Commonwealth to enter the arrest warrant into evidence and to subject it to a traditional "four corners" analysis.
Based on the foregoing, I conclude that the trial court correctly applied Steagald to this case, and that the Commonwealth did not carry its separate burden to overcome that conclusion under Payton . I further agree with the lead opinion's resolution to permit the Commonwealth an opportunity to introduce the arrest warrant for Moreno on remand. Accordingly, I respectfully concur in the result.
JUSTICE DOUGHERTY, Concurring and Dissenting
Although I concur in much of its reasoning, I write separately to distance myself from the following aspects of the lead opinion: (1) its continual reference to the relevant language from Payton v. New York , 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), as "the Payton dictum," and its subsequent treatment of that language; and (2) its ultimate conclusion the Fourth Amendment requires police to obtain a search warrant every time they wish to search a residence for the subject of an arrest warrant. I also dissent from the mandate of the lead opinion, which remands this case to the suppression court for further proceedings, as I would simply reverse the order of the Superior Court and reinstate the order of the suppression court by holding the Fourth Amendment rights of appellants Angel Romero and Wendy Castro were violated when Agent Finnegan entered their home without a search warrant in an attempt to execute an arrest warrant for Earnest Moreno. See Steagald v. United States , 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).
In Payton , the United States Supreme Court made the following pronouncement: "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton , 445 U.S. at 603, 100 S.Ct. 1371. Although this was not the ultimate holding of Payton , the High Court has since relied repeatedly on that language to resolve cases involving the execution of arrest and search warrants. See Wilson v. Layne , 526 U.S. 603, 610-611, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ; Maryland v. Buie , 494 U.S. 325, 330, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) ; Michigan v. Summers , 452 U.S. 692, 704-05, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Furthermore, lower courts have recognized these subsequent decisions transformed the Payton pronouncement from dictum "into a tenet of Fourth Amendment jurisprudence." United States v. Vasquez-Algarin , 821 F.3d 467, 472 (3d Cir. 2016). While the lead opinion cites to these later decisions and seems to recognize their import, see Opinion, at 371 n.1, its treatment of the language does not acknowledge it as controlling law. Instead, the opinion continually refers to it as "the Payton dictum" and even states the language is "constitutionally suspect." Id. at 399. Respectfully, I am constrained to distance myself from this negative characterization.
I must also distance myself from the lead opinion's ultimate conclusion which essentially would create a new federal constitutional *410 requirement that police obtain a search warrant every time they wish to search a residence for the subject of an arrest warrant. Although the opinion includes a cogent discussion of Fourth Amendment principles and makes a compelling argument, in my view the matter can be resolved without creating a new rule of constitutional law. I would rely instead on the test devised by the federal courts in cases where there is a question regarding whether Payton or Steagald controls. See United States v. Gay , 240 F.3d 1222, 1226 (10th Cir. 2001) ( Steagald (rather than Payton ) controls where officer executing arrest warrant did not have reasonable belief arrestee lived in the residence).
As I agree with the lead opinion's analysis of whether "reasonable belief" means probable cause or something less, see Opinion, at 391-95 (finding reasonable belief must mean probable cause), in my view, the critical inquiry in this case is whether Agent Finnegan had probable cause to believe Moreno resided in appellants' home. Rather than answering this question, the lead opinion instead describes a new rule, rendering the question irrelevant.[1]
To resolve this appeal, I simply would hold the information relied on by Agent Finnegan was insufficient to establish probable cause to believe Moreno lived in appellants' residence. Agent Finnegan relied on the following factors as a basis for his belief Moreno lived at their home on August 26, 2011: (1) the address appeared on Moreno's driver's license, which expired in 2007-four years prior to the search; (2) Moreno provided the address to police in 2009-two years prior to the search; (3) Moreno used the address when signing out of his halfway house in 2011; and (4) the investigation revealed members of Moreno's family resided at the address. I agree with the suppression court that the only documented evidence provided by Agent Finnegan-the information from Moreno's expired driver's license and his 2009 arrest-was stale because it failed to show Moreno used the address at the time of the search or at any time after 2009. See Suppression Court Op., 7/10/2015, at 6-7. I also agree with the suppression court's implicit rejection of the unsupported and unreliable evidence provided by Agent Finnegan, namely the undocumented information from Moreno's halfway house and Agent Finnegan's uncorroborated testimony regarding Moreno's familial connection to the address. See Id. at 7 ("No evidence was produced to show that the address was still valid for Moreno or that he used that address as his own at any time subsequent to 2009. Further, no evidence was produced to show a relative of Moreno's lived at the address or that Moreno had been seen in or about the residence on [or] near the date the authorities entered the premises."). As Agent Finnegan lacked probable cause to believe Moreno lived in appellants' residence, Steagald applies and the evidence observed and seized as a result of the warrantless search for Moreno was properly suppressed. Accordingly, I would reverse the order of the Superior Court and reinstate the order of the suppression court.
Chief Justice Saylor and Justice Baer join this Concurring and Dissenting Opinion

Although Steagald 's rule that the search of a home requires a search warrant or an exception is a constitutional truism, I observe that Appellants have consistently raised this point throughout this litigation. See N.T., 2/20/15, at 7 (defense counsel stating "my argument would be that [a] search must be conducted pursuant to a search warrant" and relying on Steagald ); Petition for Allowance of Appeal, 309 EAL 2016, at 9-10; Petition for Allowance of Appeal, 310 EAL 2016, at 10-12; Romero's Brief at 23; Castro's Brief at 23.

As the lead opinion notes, Payton states that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton , 445 U.S. at 603, 100 S.Ct. 1371. However, I agree with the Court of Appeals that "[t]here is no substantial reason to believe that the standard of knowledge should be different or greater when it comes to the other prong of the Payton test, whether the suspect resides at the house." Valdez v. McPheters , 172 F.3d 1220, 1225 (10th Cir. 1999). By contrast, the Superior Court's rule in this case dispensed with the need for any information on the "within" prong. Commonwealth v. Romero , 138 A.3d 21, 25 (Pa. Super. 2016) (citing Commonwealth v. Muniz , 5 A.3d 345 (Pa. Super. 2010) ) (stating, "[w]here authorities have a reasonable belief that the subject of an arrest warrant lives within a given premises, they can enter the home and arrest the suspect without a search warrant."), appeal granted , 639 Pa. 595 , 161 A.3d 798 (2016).

This may have been because Agent Finnegan did not believe he needed to gather any such facts as to Moreno's presence. See N.T., 2/20/15, at 22 (describing his understanding of the process as "[a] body warrant can be served on an address that we believe to be the legal address for the offender. When we are searching that address, we can look anywhere a reasonable person would believe that a [sic] individual could be hidden or hiding.").

I further note the parties to this appeal did not advocate for or against the new rule described by the lead opinion, but instead focused their advocacy on whether Agent Finnegan had a reasonable belief that Moreno resided in the home of appellants.