634 A.2d 826

**COMMONWEALTH Of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Gerald J. CROWLEY.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1993.

Decided Dec. 1, 1993.

Timothy P. Wile, Asst. Counsel In–Charge, Appellate Section, for appellant.

Timothy F. Hennessey, for appellee.

Before DOYLE and SMITH, JJ., and KELTON, Senior Judge.

DOYLE, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals an order of the Court of Common Pleas of Berks County (trial court) sustaining the appeal of Gerald J. Crowley from a one-year suspension of his operating privileges pursuant to Section 1547(b) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b).[1]

The relevant facts as found by the trial court are as follows. At approximately 10:28 p.m. on April 14, 1992, police officer Todd Fox of Bally Borough was parked in the parking lot of the Boyertown National Bank on Route 100 in Berks County

1. Section 1547(b) of the Code provides for the imposition of a one-year suspension of a driver's license upon licensee's refusal to submit to chemical testing to determine blood alcohol content. Section 1547(a) of the Code, 75 Pa.C.S. § 1547(a), commonly known as the Implied Consent Law, provides that anyone operating a motor vehicle is considered to have consented to blood alcohol content testing where a law enforcement officer has reasonable grounds to believe that the operator is under the influence of alcohol or a controlled substance.

when a motorist pulled beside his police car. The motorist told Officer Fox that he had observed a vehicle driving very erratically on Route 100. While Officer Fox and the motorist were talking, the vehicle in question pulled into the parking lot and turned its lights and engine off and on again. The vehicle then exited the parking lot with its lights off after sounding its horn several times. Officer Fox followed the vehicle on Route 100 and then onto North Seventh Street where it made a sudden stop in the middle of the road. The vehicle then made a left-hand turn into a nearby parking lot at which point Officer Fox stopped the vehicle.

Officer Fox approached the driver, Crowley, and asked him to produce his operator's license. Crowley, very confused and speaking in incomplete sentences, could not locate his license and, instead, showed Officer Fox pictures of his children. Detecting a very strong odor of alcohol when Crowley opened his car door, Officer Fox asked him to submit to a field sobriety test. Crowley refused the test. At that point Officer Fox placed Crowley under arrest for driving under the influence of alcohol. Crowley was not given *Miranda*[2] warnings then or at any other time during this entire episode.

Crowley was transported to a neighboring Township's police department for a breathalyzer test, where Officer William R. Handforth, Jr., advised Crowley that if he refused to take the breathalyzer test his license would be suspended for one year. Officer Handforth then recited to Crowley verbatim the warning which was printed on a chemical test warning card provided by DOT. The form, designated "DL–26," states in its entirety:[3]

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. We take note that the statement read from the DL–26 form in this case is manifestly different from the warning statements given by police in other prior appeals where the statements were also read from "DL–26" forms. One such case is presently on appeal to the Supreme Court. That case, *Commonwealth v. Frain* (No. 2275 C.D.1991, filed June 17, 1992), was an unreported opinion of this Court which was decided by an order reported at 148 Pa.Commonwealth Ct. 636, 611 A.2d 378 (1992). Petition for allowance of appeal was granted on December 31, 1992, and was reported at 533 Pa. 613, 618 A.2d 403 (1992). The

As a police officer, it is my duty to explain to you that the constitutional rights due you in a criminal prosecution as set forth in the Miranda decision do not apply to chemical testing under the implied consent law. Specifically, you do not have a right to consult with a lawyer or anyone else prior to taking the chemical test nor do you have the right to remain silent when a police officer asks you to submit to a chemical test. Your continued request to speak to a lawyer or anyone else after this explanation is given, or your silence when asked to submit to a chemical test, will be considered as a refusal of the chemical test subjecting you to the suspension of your driving privilege.

Crowley refused to take the breathalyzer test and at no time during these proceedings did he ever ask to speak to an attorney or anyone else.

By official notice dated April 28, 1992, DOT notified Crowley that his operating privileges were scheduled to be suspended for one year pursuant to Section 1547(b)(1) of the Code, 75 Pa.C.S. § 1547(b)(1), for failure to submit to chemical testing. Crowley filed an appeal pursuant to Section 1550 of the Code, 75 Pa.C.S. § 1550, and a hearing was conducted by the trial court on September 8, 1992. At the hearing, Crowley neither testified nor presented any evidence on his own behalf.

■ By opinion dated February 12, 1993, the trial court sustained the appeal and directed DOT to vacate Crowley's one-year suspension. The trial court found that, while Crowley was never read his *Miranda* rights in full and in the fashion commonly provided by the police, he was, however, informed sufficiently as to require an *O'Connell* [4] explanation because, the trial court reasoned, Crowley had been, in effect,

statement on the DL–26 form in *Frain* did *not* contain the critical language on the DL–26 form here that "the constitutional rights due you in a criminal prosecution as set forth in the Miranda decision do not apply to chemical testing under the implied consent law."

4. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

"Mirandized-by-T.V." [5]   The trial court then considered the sufficiency of the *O'Connell* explanation which was given to Crowley by the police officer reading DOT's DL–26 statement, and determined that the *O'Connell* explanation, as contained in the form, was insufficient as a matter of law under our decision in *Department of Transportation, Bureau of Driver Licensing v. Sorg,* 147 Pa.Commonwealth Ct. 82, 606 A.2d 1270, *petition for allowance of appeal denied,* 531 Pa. 657, 613 A.2d 561 (1992).   The trial court stated:

> *Sorg* requires that a Mirandized licensee be told that chemical testing is a civil procedure but that refusal to undergo chemical testing may be introduced in evidence in a subsequent criminal proceeding.   Mr. Crowley was not provided with this information.   As a result of Officer Handforth's failure to provide Mr. Crowley with a proper *O'Connell* explanation, Mr. Crowley's refusal to undergo chemical testing was not knowing and conscious.   Mr. Crowley's appeal of his suspension must be sustained.

(Trial Court Opinion at 8.)   This appeal followed.[6]

DOT first argues that the police officers were not required to provide Crowley with an *O'Connell* explanation, because Crowley was never read his *Miranda* rights and he never requested to speak to anyone, including a lawyer.   In *Commonwealth, Department of Transportation v. Danforth,* 530 Pa. 327, 332, 608 A.2d 1044, 1046 (1992),[7] our Supreme Court

5.   The term "Mirandized-by-T.V." reflects the concept that, due to the popularity of television police shows and the exposure of the public to *Miranda* warnings on television and in the movies, people now have a general familiarity with their constitutional rights when accused of a crime.   *See Appeal of Attleberger,* 136 Pa.Commonwealth Ct. 329, 583 A.2d 24 (1990), *petition for allowance of appeal granted,* 527 Pa. 625, 592 A.2d 45–46 (1991), *dismissed as having been improvidently granted,* 531 Pa. 450, 613 A.2d 1203 (1992).

6.   Our scope of review in licensing suspension cases is limited to a determination of whether the trial court's findings of fact are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion.   *Department of Transportation v. Gross,* 146 Pa.Commonwealth Ct. 1, 605 A.2d 433 (1991).

7.   This case, *Commonwealth, Department of Transportation v. John Martin Danforth,* should not be confused with an earlier decision by our Superior Court, *Commonwealth v. Sharon Louise Danforth,* 395 Pa.Su-

explained that "[t]he duty of the police to inform an arrestee that the right to counsel is inapplicable to requests for chemical testing is simply *not* contingent upon the arrestee exhibiting confusion concerning his right to speak with an attorney, or actually requesting to speak with an attorney." (Emphasis in original.) Thus, if Crowley was "Mirandized," then the police had an affirmative duty to give him the *O'Connell* explanation of his rights and obligations under the Implied Consent Law. *Department of Transportation, Bureau of Driver Licensing v. Fiester,* 136 Pa.Commonwealth Ct. 342, 583 A.2d 31 (1990), *petition for allowance of appeal denied,* 528 Pa. 632, 598 A.2d 285 (1991).

■ Review of the record in this case indicates that although Crowley was never read his *Miranda* rights in a formal manner, the "Miranda decision" was specifically mentioned on DOT's DL–26 form which Officer Hanforth read to Crowley. We conclude that Officer Hanforth's use of DOT's DL–26 form containing the term "Miranda decision" required that an *O'Connell* explanation be given to Crowley, and we agree with the trial court's conclusion that Crowley was a person "Mirandized-by-T.V." and could be confused as to his constitutional rights under the Vehicle Code. As the trial judge articulated, "[i]t would be bizarre to hold that when the police read the complete *Miranda* warnings an *O'Connell* explanation is required, but where, as in the instant manner, those rights are provided in a convoluted and inherently confusing format no *O'Connell* explanation is needed," (Trial Court Opinion at 5) to which we would add, that DOT's DL–26 explanation has to assume that the person being read the warning already knows what the "Miranda decision" is; and how else could that occur (since the police didn't separately mention it), if not through common knowledge. Hence, Crowley was "Mirandized-by-T.V."

perior Ct. 1, 576 A.2d 1013 (1990). This latter case, *Sharon Louise Danforth,* was consolidated on appeal with *Commonwealth v. Kohl,* 395 Pa.Superior Ct. 73, 576 A.2d 1049 (1990), and both were decided and reported by the Supreme Court under the running citation, *Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992).

■ Because an *O'Connell* explanation was required, we next address whether the *O'Connell* explanation provided in DOT's DL–26 form is sufficient, as a matter of law, to fulfill our requirements that a licensee make a knowing and conscious refusal. We hold that it is.

Two recent cases by our Court, both filed on April 13, 1993, *Department of Transportation, Bureau of Driver Licensing v. Elko*, 155 Pa.Commonwealth Ct. 24, 624 A.2d 717, *petition for allowance of appeal denied*, —— Pa. ——, 634 A.2d 1118 (244 W.D.Alloc.Dkt.1993, filed November 5, 1993), *Department of Transportation, Bureau of Driver Licensing v. Kaczorowski*, 155 Pa.Commonwealth Ct. 36, 624 A.2d 723 (1993), refined the *Sorg* requirements [8] and control the outcome of this case.

In both *Elko* and *Kaczorowski*, the arresting officer read an implied consent warning to the licensee which was almost identical to the one read to Crowley. The *Elko* arresting officer stated, in pertinent part, that:

> [Y]our constitutional rights as a defendant in a criminal case do not apply to the taking of a chemical test, and therefore you do not have a right to consult with an attorney or anyone else prior to taking the chemical test or to have an attorney or anyone else present while you take the chemical test. Nor do you have a right to remain silent when asked to take a chemical test.

**8.** In *Sorg*, we considered whether the explanation given to the licensee by the arresting officer was sufficient under *O'Connell*. While we declined to prescribe specific language to be used, we did indicate what information must be included in an *O'Connell* warning:

1. That the right to counsel is a constitutional right and applies only to criminal proceedings, not to civil proceedings.

2. That the request to submit to chemical testing is not a criminal proceeding, that it is a civil proceeding, but the licensee's refusal to submit to the testing may be introduced in evidence in a subsequent criminal proceeding.

3. That the licensee does not have a right to contact an attorney or anyone else before taking the test nor does he have the right to remain silent as to the testing procedures; that is, licensee must affirmatively agree to submit to the chemical testing.

*Sorg*, 147 Pa.Commonwealth Ct. at 91, 606 A.2d at 1275 (footnote omitted).

*Elko*, 155 Pa.Commonwealth Ct. at 28–29, 624 A.2d at 719 (emphasis deleted). The *Kaczorowski* arresting officer, apart from some minor grammatical differences, read essentially the same warning.[9]

In finding the above explanations sufficient under *O'Connell* as a matter of law, we held in *Elko* and *Kaczorowski* that the *Sorg* requirement, that the police must inform a licensee that his/her refusal of the chemical test may not be introduced into evidence in a related criminal trial, was not required and was not a necessary element of an adequate *O'Connell* explanation. This refinement of *Sorg* was dictated by our Supreme Court's decision in *Kohl*, which held that the chemical tests authorized by Section 1547(a)(2) of the Code, 75 Pa.C.S. § 1547(a)(2), violate the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, when the results of such tests are offered as evidence in a criminal trial. Based on *Kohl*, we concluded in *Elko* that requiring a Mirandized licensee be told that his refusal to undergo chemical testing may be introduced in evidence in a subsequent criminal proceeding is not "essential to a knowledgeable decision on whether to submit to a chemical test and may be an inaccurate statement of the law, or at least an incomplete explanation of the law." *Elko*, 155 Pa.Commonwealth Ct. at 30, 624 A.2d at 720. Thus, we held that a chemical testing warning that does not reference the use of a refusal in a later criminal proceeding is a sufficient warning.[10]

9. The *Kaczorowski* arresting officer stated:

> I must also inform you that your constitutional rights as a defendant in a criminal case do not apply to the taking of a chemical test and that therefore, you do not have a right to consult with an attorney, or anyone else, prior to taking the chemical test or to have an attorney, or anyone else present while you take the chemical test, nor do you have a right to remain silent when asked to take a chemical test. *Kaczorowski*, 155 Pa.Commonwealth Ct. at 38, 624 A.2d at 724.

10. *See Department of Transportation, Bureau of Driver Licensing v. Jennings*, 156 Pa.Commonwealth Ct. 219, 221 n. 5, 627 A.2d 211, 214 n. 5 (1993), stating that:

> *Elko* and *Kaczorowski* . . . stand for the proposition that the inclusion of the statement required in *Sorg*—that the licensee's refusal to submit to testing may be introduced in evidence in a subsequent

We conclude, therefore, that the trial court erred in sustaining Crowley's appeal.[11] In the present case, DOT's DL–26 form instructed Crowley that (1) his constitutional rights in a criminal prosecution as set forth in *Miranda* did not apply to chemical testing under the Implied Consent Law,[12] (2) that he did not have the right to consult with a lawyer or anyone else prior to taking the chemical test nor did he have the right to remain silent, and (3) that continued requests to speak to a lawyer or anyone else or if he remained silent when asked to take the test would be considered a refusal subjecting him to a suspension. This warning was sufficient because it covered the subject matter of *Sorg*, as refined by *Elko* and *Kaczorowski*.

Accordingly, the order of the trial court is reversed.

## ORDER

NOW, December 1, 1993, the order of the Court of Common Pleas of Berks County in the above-captioned matter is hereby reversed.

SMITH, J., concurs in the result only.

---

criminal proceeding—while advisable, is not essential to a knowledgeable decision on whether to submit to a chemical test.

11. We note that the trial court, at the time it decided this case, February 12, 1993, correctly interpreted and applied *Sorg* as it existed at that time. *Elko* and *Kaczorowski* were not filed until April 13, 1993.

12. *See* note 3, *supra.*