624 A.2d 717

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Nicholas ELKO, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 21, 1992.

Decided April 13, 1993.

Harold Cramer, Chief Counsel, for appellant.

Daniel P. Beisler, Jr., for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, PELLEGRINI and FRIEDMAN, JJ.

DOYLE, Judge.

The Pennsylvania Department of Transportation, Bureau of Driver Licensing (Department) appeals from the order of the Court of Common Pleas of Allegheny County sustaining Nicholas Elko's (Licensee's) appeal from a one-year suspension of his operating privilege pursuant to Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547.

On March 3, 1991, Licensee was stopped by Officer Theodore Dixon at approximately 5:06 a.m. after that officer initially observed Licensee's vehicle proceeding east on 12th Street in McKeesport without benefit of headlights. Licensee acknowledged he had previously been drinking, and Officer Dixon smelled a strong odor of alcohol on Licensee's breath and person. The officer administered field sobriety tests, noticed Licensee had a problem standing, and then placed him under arrest for driving under the influence of alcohol.

Officer Dixon testified that he read the implied consent warnings to Licensee and that these warnings included the explanation that chemical testing does not trigger entitlement either to an attorney or to remain silent, because those rights exist in a criminal case and do not pertain to the chemical test for blood-alcohol content. Officer L. Johnson, who assisted Officer Dixon at the scene, confirmed Dixon's testimony that he read Licensee the implied consent warnings.

Licensee testified that he could not recall Officer Dixon reading to him from a "chemical testing warning card," although he does remember the officer requesting him to submit to a blood-alcohol test and stating that if he did not do so his operating privilege would be suspended for one year. Licensee further testified that he asked to make a telephone call at the scene, but Officer Dixon disputes this.

Both Officer Dixon and Licensee stated that, at the scene, Licensee first agreed to submit to chemical testing before changing his mind. Licensee, however, decided to refuse

testing upon his arrival at the hospital allegedly after being denied the chance to make a telephone call.[1] Thereafter, he was taken to the police station where Officer Dixon allowed him a telephone call. Licensee contacted his brother, "A.J.," who arrived at the station approximately fifteen minutes later.

Licensee testified that, after consultation with "A.J.," he consented to take a breathalyzer test. Officer Dixon testified he never offered Licensee the option of taking the breathalyzer; instead, he requested only chemical testing of Licensee's blood and urine.[2]

The common pleas court found that, after Licensee was arrested, he was requested "to submit to chemical testing and was informed of his constitutional rights." As the Department argues, however, there is no evidence in the record to establish that Licensee was made cognizant of his constitutional rights under *Miranda*.[3] Rather, there was only Officer Dixon's testimony, corroborated by the testimony of Officer Johnson, that Dixon read Licensee the implied consent warnings before Licensee consented and then refused to have his blood and urine tested. These warnings included the explanation that Licensee's constitutional rights to counsel and to remain silent did not pertain to the chemical test for alcohol. The common pleas court's finding that Licensee was informed of his constitutional rights was, therefore, inaccurate.

Because Licensee was not given the *Miranda* warnings, this case is not one involving the kind of *per se* confusion which took place in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). *See*

1. Officer Dixon testified Licensee refused to submit to the test at the scene, but he transported Licensee to the hospital to give him "a second chance." Officer Johnson stated Licensee refused to submit to blood and urine testing "inside the police vehicle, somewhere along the way." The propriety of this initial refusal is not at issue here.

2. Even assuming that Officer Dixon made the offer, it was gratuitous and could be revoked at any time before the test was administered. *Geonnotti v. Department of Transportation, Bureau of Driver Licensing*, 138 Pa.Commonwealth Ct. 652, 588 A.2d 1343 (1991).

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Department of Transportation v. McGarvey,* 136 Pa.Commonwealth Ct. 358, 583 A.2d 39 (1990). Nonetheless, this court has held that where:

> a licensee requests to speak to an attorney, or anyone else, prior to taking a chemical test, even though Miranda warnings have not been given it is incumbent upon the police to inform the licensee that he or she does not have the right to consult with an attorney, or anyone else, and that a citizen's constitutional rights, although applicable to the criminal charges, do not apply under the implied consent law.

*Id.* at 364, 583 A.2d at 42. *See also Appeal of Attleberger,* 136 Pa.Commonwealth Ct. 329, 583 A.2d 24 (1990), *petition for allowance of appeal granted,* 527 Pa. 625, 592 A.2d 45–46 (1992), *dismissed as having been improvidently granted,* 531 Pa. 450, 613 A.2d 1203 (1992).

The sole issue we must consider is whether the common pleas court erred as a matter of law in sustaining Licensee's appeal on the grounds that he was confused regarding his right to counsel.

Officer Dixon testified that he read Licensee the following warnings and explanation:

> No. 1, please be advised that you are now under arrest for driving under the influence of alcohol or a controlled substance pursuant to Section 3731 of the Vehicle Code. I am requesting that you submit to a chemical test of your blood and urine, whichever type the officer chooses.

> It is my duty as a police officer to inform you that your operating privilege will be suspended for one year if you refuse to submit to this chemical test.

> *I must also inform you that your constitutional rights as a defendant in a criminal case do not apply to the taking of a chemical test, and therefore you do not have a right to consult with an attorney or anyone else prior to taking the chemical test or to have an attorney or anyone else present while you take the chemical test. Nor do you have a right*

*to remain silent when asked to take a chemical test.* (emphasis added)

(N.T. p. 8).

We hold that this warning is adequate to meet the guidelines enunciated by this Court in the recently decided case of *Department of Transportation, Bureau of Driver Licensing v. Sorg,* 147 Pa.Commonwealth Ct. 82, 606 A.2d 1270 (1992) *petition for allowance of appeal denied,* 531 Pa. 657, 613 A.2d 561 (1992). In *Sorg,* we articulated guidelines to be covered in statements by the police in situations where no *Miranda* warnings are given, but where there is, nevertheless, an overt manifestation of confusion by the licensee. We did not, however, mandate that there must be a verbatim recitation of the information set forth in *Sorg,* only that certain subject matter should be covered.

█ *Sorg* indicates that the police should tell a licensee who overtly manifests confusion over his constitutional rights:

1. That the right to counsel is a constitutional right and applies only to criminal proceedings, not to civil proceedings.

2. That the request to submit to chemical testing is not a criminal proceeding, that it is a civil proceeding, but the licensee's refusal to submit to the testing may be introduced in evidence in a subsequent criminal proceeding.

3. That the licensee does not have a right to contact an attorney or anyone else before taking the test nor does he have the right to remain silent as to the testing procedures; that is, licensee must affirmatively agree to submit to the chemical testing.

*Id.* at 91, 606 A.2d at 1275 (footnote omitted).

When we compare the warnings and explanation given in this case with the warnings and explanation in *Sorg,* the only missing elements are the omission by Officer Dixon of the words "civil proceeding" and of a statement that Licensee's refusal to submit to chemical testing may be introduced in evidence in a subsequent criminal proceeding.

With respect to the absence of the term "civil proceeding," Licensee was told that his "constitutional rights as a defendant in a criminal case do not apply to the taking of a chemical test." Therefore, by implication, the information that the chemical test was civil rather than criminal in nature was communicated, and, we repeat, rote adherence to the language in *Sorg* is unnecessary.

■ We turn now to the absence of any statement from Officer Dixon that Licensee's refusal to take the chemical test could be introduced in a subsequent criminal proceeding. In *Sorg*, we attempted to make definitive guidelines for the police and set forth an appropriate all-inclusive set of statements which the police could follow to make certain the licensee is provided with information enabling him to make a knowing and conscious refusal. We did this so that a licensee is not prejudiced by a lack of knowledge in either the possible civil proceeding for revocation of a license or the possible criminal proceeding. *Sorg* provides a guide, but the necessity for the statement that a refusal will be admissible in a criminal proceeding is certainly more relevant to an attack on the validity of a criminal proceeding than it is to the issue of a license revocation. We conclude, therefore, that the inclusion of such a statement, while advisable, is not essential to a knowledgeable decision on whether to submit to a chemical test and may even be an inaccurate statement of the law, or at least an incomplete explanation of the law. *See Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308 (1992) where the Supreme Court held that the chemical tests authorized by Section 1547(a)(2) of the Vehicle Code[4] violate the Fourth

4.  Section 1547(a) states:
    (a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to. believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
    (1) while under the influence of alcohol or a controlled substance or both; or

Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution when the results are offered as evidence in a criminal trial. Moreover, the Supreme Court, in its recent decision in *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992), a civil appeal concerning the sufficiency of the implied consent warning where *Miranda* rights were given, did not even suggest, let alone hold, that such information was necessary for a proper implied consent warning.

Having concluded that Licensee's warning concerning the absence of a right to consult with counsel was in accordance with the law, the order of the Court of Common Pleas of Allegheny County is reversed.

## ORDER

NOW, April 13, 1993, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed.

SMITH, Judge, concurring.

I concur with the Majority's conclusion that the warnings given Licensee were sufficient to enable him to make a knowledgeable decision on whether to submit to a chemical test. However, I cannot subscribe to the rationale used to reach the result, and express my concern over the Court's failure to seize this opportunity to reexamine the guidelines set forth in *Department of Transportation, Bureau of Driver Licensing v. Sorg*, 147 Pa.Commonwealth Ct. 82, 606 A.2d

(2) which was involved in an accident in which the operator or passenger or any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

*Kohl* struck down only Section 1547(a)(2). It does not, however, make sense that for the purposes of implied consent the police would have to explain that chemical test results would not be admissible under Section 1547(a)(2), but are admissible under Section 1547(a)(1) as (1) such explanation is overly complex and (2) as we have just explained, this information impacts only upon the criminal case, not the civil license suspension proceeding.

1270, *appeal denied*, 531 Pa. 657, 613 A.2d 561 (1992), and its progeny.

The required warnings enunciated by the Pennsylvania Supreme Court in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989), have been recently reaffirmed by that Court in *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992). The holding in *Danforth* centers on the principle that *O'Connell* warnings clarifying the extent of the right to counsel are "easily understandable by the motoring public and will not unnecessarily delay the performance of chemical testing." *Danforth*, 530 Pa. at 333, 608 A.2d at 1046–47. Nonetheless, this Court by judicial construct has continually expanded the requirements of *O'Connell* in a manner which is burdensome and serves to further confuse the average motorist and potentially law enforcement officers who have not had the benefit of a law school education.

In the companion case to *Sorg, Department of Transportation, Bureau of Driver Licensing v. Hoover*, 147 Pa.Commonwealth Ct. 70, 606 A.2d 1264, *appeal denied*, 531 Pa. 656, 613 A.2d 561 (1992), a dissenting Judge Palladino exhibited remarkable prescience when she wrote:

> [T]o pursue the analysis the court proposes would have the effect of transforming a simple rule by the legislature into a procedural morass and thereby provide escape routes for drivers who are highway menaces. An expansion of the 'knowing and conscious refusal' standard could be perceived as an additional avenue through which drunk drivers can try to avoid basic societal responsibilities.

*Id.* at 76, 606 A.2d at 1267. Judge Palladino's warning has been borne out by subsequent history, and each succeeding case appears not to clarify the rights of the arrestee, but rather to further obfuscate the precise intent of *O'Connell*.

It further appears that the Court has lost sight of the fact that among the conditions imposed upon a licensee's privilege to operate a motor vehicle in this Commonwealth is the implied consent to submit to chemical testing where there is

reasonable cause to believe a licensee is driving under the influence of alcohol and/or a controlled substance. By our decision today, this Court has missed the opportunity to reconsider its progressive misapplication of the requirements of *O'Connell* and of the clear legislative intent expressed in Section 1547 of the Vehicle Code, *as amended*, 75 Pa.C.S. § 1547.

FRIEDMAN, Judge, dissenting.

I respectfully dissent.

The majority states the issue as "whether the common pleas court erred as a matter of law in sustaining Licensee's appeal on the grounds that he was confused regarding his right to counsel" (majority op. at 26, 624 A.2d at 719) and determines that because the Licensee was told that his " 'constitutional rights as a defendant in a *criminal* case do not apply to the taking of a chemical test[,]' *by implication*, the information that the chemical test was civil rather than criminal in nature was communicated...." (Majority op. at 27, 624 A.2d at 720.) (Emphasis added.) I would not so easily find the implication of communication.

In *Sorg*, we set forth the essential elements of the initial warning, requiring:

[T]he licensee must be given, at least, the following information:

1. That the right to counsel is constitutional and applies only to criminal proceedings.

2. That the request to submit to chemical testing is not a criminal proceeding, that it is a civil proceeding, but the licensee's refusal to submit to the testing may be introduced in evidence in a subsequent criminal proceeding.

3. That the licensee does not have a right to contact an attorney or anyone else before taking the test nor does he have the right to remain silent as to the testing procedures; that is, licensee must affirmatively agree to submit to the chemical testing.

*Sorg,* 147 Pa.Commonwealth Ct. 82, 91, 606 A.2d 1270, 1275 (1992).

While I agree that a verbatim reading of the *Sorg* warning is not mandatory, I also believe that all essential elements of the warning must be communicated so that a defendant can make an informed refusal. *Department of Transportation, Bureau of Driver Licensing v. Sorg,* 147 Pa.Commonwealth Ct. 82, 606 A.2d 1270, *petition for allowance of appeal denied,* 531 Pa. 656, 613 A.2d 561 (1992); *see also Department of Transportation v. Hoover,* 147 Pa.Commonwealth Ct. 70, 606 A.2d 1264 (1992).

However, the majority implies that some *Sorg* elements may be dispensable, stating:

> When we compare the warnings and explanation given in this case with the warnings and explanation in *Sorg,* the only missing elements are the omission by Officer Dixon of the words "civil proceeding" and of a statement that Licensee's refusal to submit to chemical testing may be introduced in evidence in a subsequent criminal proceeding.

(Majority op. at 27, 624 A.2d at 720.)

In my view, these "only missing elements" are essential elements which must be included.[1]

Nor do I agree with the majority's conclusion that the essential elements required by *Sorg,* although not expressly stated, were, or even could be, communicated to Elko "by implication." Rather, I conclude from *Sorg* that the defendant must be told directly, rather than by implication, that the right to contact an attorney or anyone else is a constitutional right which applies only to criminal, and not to civil, proceedings and that chemical testing is civil rather than criminal in nature. It is clear to me that a reasonable person who could understand the *Sorg* warning could be easily confused by the warning given in this case, which lacked these two of *Sorg*'s essential elements.

1. In addition, I am concerned about the danger of using a term like "only" to refer to elements designed to protect a person's rights. An individual's rights must be zealously guarded.

Inferring the presence of *Sorg* elements, as proposed by the majority here, will not further the purposes of the implied consent law, but "will merely breed more confusion and foster additional litigation." *Ted F. Kaczorowski v. Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing,* 155 Pa.Commonwealth Ct. 36, 624 A.2d 723, 727 (1993).

> [An] inherent unfairness exists where, after an arrestee overtly asserts his right to counsel, the arresting officer merely offers the bald statement that such a right does not now apply. This type of "explanation" serves only to increase rather than to dispel confusion. In order to be meaningful, the explanation must also explain the reason: that the right to counsel applies only to *criminal* proceedings and that a chemical test request is *civil and not criminal in nature.*

*Id.* (dissenting slip op. at 4).

Therefore, I would affirm the decision of the trial court, not because the defendant was confused as a result of having been given his *Miranda* rights,[2] but on the grounds that the police officer failed to fully inform Elko *why* there is no right to contact an attorney or anyone else when chemical testing is requested.

McGINLEY, J., joins in this dissenting opinion.

---

**2.** I do not reach the question of whether the police officer was required to repeat the full warning after Elko indicated his confusion, because I do not believe that the initial warning contained the essential elements.