631 A.2d 818

**Charles R. HERTZER, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 16, 1993.

Decided Sept. 8, 1993.

Mario P. Melucci, for appellant.

William A. Kuhar, Jr., Asst. Counsel, and Timothy P. Wile, Asst. Counsel In–Charge, Appellate Section, for appellee.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

Charles R. Hertzer (Licensee) appeals an order of the Court of Common Pleas of Allegheny County (trial court) dismissing his appeal of a one-year suspension of his operator's license by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDOT), pursuant to Section 1547 of the Vehicle Code, *as amended,* 75 P.S. § 1547, the implied consent law.

On June 21, 1992, at 3:50 a.m., Officer Kenneth Yuhas of the Pennsylvania State Police observed a vehicle travelling in an erratic manner. Officer Yuhas activated his lights and siren to stop the vehicle, but it initiated a high-speed chase that continued for eight miles. During the chase, Officer Yuhas was able to pull alongside the vehicle and observe the driver and to ascertain the name and address of the registered owner by the license plate number. After losing the vehicle in the chase, Officer Yuhas went to the home of Licensee, the registered owner, and found the vehicle in the driveway with the engine still warm. After being admitted to the home by Licensee's sister, he found Licensee in bed and identified him as the driver of the vehicle he had pursued earlier. Licensee was arrested and taken to the police barracks.

Because Officer Yuhas smelled alcohol on Licensee's breath and noticed that he swayed and staggered, he was charged with driving under the influence of alcohol, Section 3731 of the Vehicle Code, *as amended,* 75 P.S. § 3731, as well as several other criminal charges. Licensee was given his *Miranda*[1] rights at the police barracks. Officer Yuhas then requested Licensee to submit to an intoxilyzer test and informed him of the implied consent law.[2] When Officer Yuhas asked Licensee if he understood, Licensee responded that he wanted to speak to his attorney before giving the test. Officer Yuhas told him that he had no right to speak to his attorney. Licensee repeatedly asked to speak to his attorney. Officer Yuhas stated that he had no right to speak to his attorney and that

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Officer Yuhas testified that he read Licensee the following warning: Section 1547 of the Vehicle Code in part reads as follows: Any person who drives, operates, or is in physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood, urine for the purpose of determining the alcoholic content in the blood for [sic] the presence of a controlled substance when a police officer has reasonable grounds to believe the person was driving, operating, or in actual physical control of the movement of a vehicle. Refusal to submit to chemical testing will result in the suspension of that person's operating privilege for a period of 12 months. (R.R. 18–19).

continuing to make the request would be considered a refusal. Officer Yuhas also told Licensee that his *Miranda* rights concerned the criminal charges, and that the implied consent law only had to do with the driving under the influence charge, and he had no specific right to speak to an attorney prior to taking the test.[3] After ten minutes without Licensee agreeing to the testing, Officer Yuhas recorded a refusal.

By letter dated August 7, 1992, PennDOT notified Licensee that his operating privileges would be suspended for a period of one year under Section 1547 of the Vehicle Code as a result of his refusal of chemical testing on June 21, 1992. Licensee filed a statutory appeal with the trial court. At the hearing, after PennDOT presented the testimony of Officer Yuhas, Licensee testified that Officer Yuhas asked him to take the breathalyzer test without explaining the implied consent law and that he responded "I don't know" and the officer left the room. Licensee testified that while alone with another officer, he asked about the breathalyzer test. After that conversation, Licensee told Officer Yuhas that he wanted to take the test, but Yuhas replied that he had already refused.

█ The trial court found the testimony of Officer Yuhas to be more credible than that of Licensee and dismissed the appeal. The trial court also found that Officer Yuhas explained the implied consent law and its implications clearly and concisely, and that Licensee demonstrated a conscious refusal to testing by not complying, although given sufficient opportunities and by persistently requesting counsel. Licensee then filed this appeal.[4]

3. On cross-examination, Officer Yuhas testified that:

He was advised that the Miranda rights concerned the criminal charges. I explained it to him, and when I read him the implied consent law, that only had to do with the DUI and he had no specific right to speak to an attorney prior to taking the test. That was explained to him a couple of times, two or three times.
(R.R. 25).

4. In a license suspension case, our scope of review is limited to determining whether the findings of fact are supported by competent evidence and whether the trial court committed an error of law or an

Licensee contends that he was not given sufficient warnings by Officer Yuhas under *O'Connell* and *Commonwealth, Department of Transportation v. Elko*, 155 Pa.Commonwealth Ct. 24, 624 A.2d 717 (1993), after he was given *Miranda* warnings and manifested confusion about his rights by requesting to speak to his attorney.[5] PennDOT contends that the warnings given Licensee were sufficient and that Licensee waived this issue by not raising it before the trial court.

■ Initially, we must address PennDOT's contention that Licensee did not raise the issue of adequate *O'Connell* warnings before the trial court. Issues not raised before the trial court cannot be presented for the first time on appeal. *Commonwealth, Department of Transportation, Bureau of Driver Licensing v. Diamond*, 151 Pa.Commonwealth Ct. 351, 616 A.2d 1105 (1992); Pa.R.A.P. 302(a). In *Diamond*, PennDOT raised to this court an alternate basis for a suspension imposed on a licensee than the one upon which it was originally based. However, the trial transcript revealed that the theory was not argued before the trial court and we refused to consider the alternate theory.

In this case, Licensee was not given the opportunity to present a legal argument to the trial court, only testimony was presented before the judge made his decision that the appeal would be dismissed. The transcript establishes that on direct examination, Officer Yuhas testified that Licensee repeatedly asked to speak to his attorney. Licensee's counsel asked

abuse of discretion in reaching its decision. *Commonwealth, Department of Transportation v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).

5. No issue has been raised in this appeal that PennDOT did not meet its burden to prove its *prima facie* case: (1) the motorist was arrested for driving under the influence of alcohol; (2) the motorist was requested to submit to chemical testing; (3) the motorist refused to submit to the test; and (4) the motorist was specifically warned that a refusal would result in the suspension of his license. *Department of Transportation, Bureau of Driver Licensing v. Garlan*, 121 Pa.Commonwealth Ct. 400, 550 A.2d 873 (1988), *petition for allowance of appeal denied*, 522 Pa. 614, 563 A.2d 499 (1989). Although at the trial court, Licensee specifically alleged that Officer Yuhas did not warn him that a refusal would result in a suspension before he answered that he didn't know, the trial court found that testimony not credible and Licensee does not argue that point on appeal.

Officer Yuhas whether *Miranda* warnings were given and whether the Officer knew whether Licensee requested to speak to his attorney about the chemical test or the *Miranda* issues. Under the circumstances, such questions sufficiently raise the issue of whether Licensee was confused about his rights so that his refusal was not knowing and conscious.

 As to whether Licensee was given adequate warnings, Licensee contends that because *Miranda* warnings were given, Officer Yuhas' statement that he had no right to an attorney before submitting to chemical testing was inadequate to explain the constitutional right to counsel. When the *Miranda* warnings are given prior to or at the same time as a request for chemical testing, the police have an affirmative duty to inform the arrestee that he does not have the right to consult with an attorney or anyone else prior to taking the test. *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992); *O'Connell*, 521 Pa. at 252, 555 A.2d at 878.[6]

In *Department of Transportation, Bureau of Driver Licensing v. Sorg*, 147 Pa.Commonwealth Ct. 82, 606 A.2d 1270 (1992), *petition for allowance of appeal denied*, 531 Pa. 657, 613 A.2d 561 (1992), we held that when the *Miranda* warnings are given and the licensee requests to speak to counsel, there is per se confusion and *O'Connell* warnings must be given explaining why the right to counsel is not applicable. We then set forth additional guidance on the concepts to be communicated to a license where *Miranda* warnings are given:

1. That an individual's constitutional rights when accused of a crime do not apply to the chemical testing procedure under Pennsylvania's Vehicle Code.

2. Specifically, that the licensee has no right to consult with counsel or anyone else before taking the test.

**6.** Even where no *Miranda* warnings are given, *O'Connell* warnings must be given to a licensee who requests legal consultation or otherwise manifests confusion about his constitutional rights. *Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing v. McCann*, 533 Pa. 456, 626 A.2d 92 (1993); *Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing v. Gomo*, 157 Pa.Commonwealth Ct. 142, 629 A.2d 217 (1993).

3. That the *Miranda* protections are not applicable because chemical testing is a civil procedure, not a criminal proceeding, and the *Miranda* protections only apply in criminal proceedings, but licensee's refusal to submit to the testing may be introduced in evidence in a subsequent criminal proceeding.

*Sorg,* 147 Pa.Commonwealth Ct. at 90, 606 A.2d at 1274.[7] The concepts must be communicated to the licensee, but rote adherence to the *Sorg* language is unnecessary. *Elko,* 155 Pa.Commonwealth Ct. at 29, 30, 624 A.2d at 720; *Kaczorowski v. Commonwealth, Department of Transportation,* 155 Pa.Commonwealth Ct. 36, 624 A.2d 723 (1993).

In *Elko,* the officer gave the licensee, who was not given *Miranda* warnings, the following warning:

I must also inform you that your constitutional rights as a defendant in a criminal case do not apply to the taking of a chemical test, and therefore, you do not have a right to consult with an attorney or anyone else prior to taking the chemical test or to have an attorney or any else present while you take the chemical test. Nor do you have a right to remain silent when asked to take a chemical test.

We held that the warning was adequate to meet the guidelines enunciated in *Sorg.* In so holding, we stated that although the warning did not state that the chemical test was a civil proceeding, the statement that "the constitutional rights as a defendant in a criminal case do not apply to the taking of a chemical test" implied that the chemical test was civil rather than criminal. *Id.,* 155 Pa.Commonwealth at 38, 624 A.2d at 724.[8]

7. PennDOT argues that because the Supreme Court decided *Danforth* after this court's decision in *Sorg* without mentioning the information set forth in *Sorg,* the Supreme Court disapproved of the holding in *Sorg.* We must disagree with that argument because *Danforth* addressed only whether warnings should have been given to a licensee who was given *Miranda* warnings.

8. We also held that the warning in *Sorg* that the refusal to take the chemical test could be introduced in a subsequent criminal proceeding, while advisable, is not essential, because it is more relevant to an attack on the validity of a criminal proceeding and may be an inaccurate or

▉ In this case, the warning given by Officer Yuhas was much less clear. Unfortunately, the further warning was only mentioned on cross-examination and was not elucidated on redirect or rebuttal examination. The officer did not restate the words he said to Licensee, he only stated that "He was advised that the *Miranda* rights concerned the criminal charges. I explained it to him, and when I read him the implied consent law, that only had to do with the DUI and he had no specific right to speak to an attorney prior to taking the test." This statement by Officer Yuhas is evidence that he gave Licensee part of the information set forth in *Sorg.* However, there was no statement that chemical testing is a civil proceeding, and the constitutional rights applicable when accused of a crime do not apply to the civil proceeding but only apply in criminal proceedings. In fact, Officer Yuhas then states that the implied consent law only had to do with DUI, referring to driving under the influence, which is a criminal charge. This statement is contradictory and does nothing to suggest or imply that the chemical testing is considered a civil proceeding. This information, unlike in *Elko*, does not convey to the Licensee that the chemical test is not a criminal proceeding.

We note that had the warnings given by Officer Yuhas been sufficient under *O'Connell* and *Sorg* and established in the record, Licensee's further requests for an attorney would have been a refusal. However, because the warnings did not sufficiently explain why Licensee was not entitled to an attorney prior to the taking of the test, his refusal was not a knowing and conscious one. Accordingly, we must reverse the order of the trial court.

### ORDER

AND NOW, this 8th day of September, 1993, the order of the Court of Common Pleas of Allegheny County, dated January 13, 1993, No. S.A. 2753, is reversed.

incomplete statement of law. *Id.,* 155 Pa.Commonwealth at ——, 624 A.2d at 724. *See also Kaczorowski.*