639 A.2d 909

Jeffrey C. FIGURSKI, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellee.

Commonwealth Court of Pennsylvania.

Submitted Feb. 7, 1994.

Decided March 11, 1994.

---

500

Stephen J. Lagner, III, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellee.

Before CRAIG, President Judge, and PELLEGRINI, J., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

Jeffrey C. Figurski (Licensee) appeals from an order of the Court of Common Pleas of Erie County (trial court) which sustained the suspension of his operating privilege for refusal to submit to a blood alcohol test pursuant to Section 1547(b)(1) of the Vehicle Code.[1]

Previously, in an unreported opinion, we remanded this case to the trial court to reconsider "whether or not the licensee's appeal to the court of common pleas was timely filed." 156 Pa.Cmwlth. 686, 628 A.2d 535 (1993). The trial court ruled that the appeal was timely, a finding the Department of Transportation, Bureau of Driver Licensing (Department) does not now contest. As set out in that opinion, the facts are as follows:

On June 23, 1990, a police officer arrived at the scene of an accident involving the licensee's vehicle. While completing an accident form, the officer noticed a strong odor of alcohol on the licensee's breath and observed that his eyes were bloodshot and his gait unsteady. The officer placed the licensee under arrest for driving while under the influence of alcohol and asked him to submit to a blood test at the Metro Health Center. The licensee agreed. At no time did the officer give the licensee *Miranda* warnings.[2]

1. Section 1547(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1), provides:

If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

At the Center, the officer asked the licensee to sign a consent form.[3] The licensee responded by asking to call his wife at which point the officer "explained to him that no such rights attach prior to the test." Original Record (O.R.) at 10, Reproduced Record (R.R.) at 10. The licensee then refused to take the test and the officer warned him that his license would be suspended for one year. Indicating that he would take the test, the licensee began to sign the form, then stopped and demanded to be allowed to call his wife. He was again advised of the potential year suspension for a refusal to submit to testing. This exchange was repeated a third time. Thereafter, the licensee remained mute for a matter of minutes. The officer proceeded to handcuff the licensee at which time he attempted to but was prevented from signing the form. A refusal was recorded and DOT subsequently notified the licensee of the suspension of his operating privilege.

For purposes of the merits of the case, the trial court affirmed the suspension finding that the Licensee "obstinately refused to consent to blood testing and did not, as petitioner contends, simply refuse to sign a hospital consent form." The appeal of the license suspension is now before us.[4]

The Licensee contends that the trial court erred in concluding that his refusal was knowing and conscious because of confusion regarding whether *Miranda* warnings applied to

3. The form, captioned METRO HEALTH CENTER *AUTHORIZATION FOR BLOOD/URINE ANALYSIS*, contained three paragraphs, each followed by a subscription line. The first and third paragraph were to be signed by the officer and the phlebotomist, respectively. The second paragraph, to be signed by the "patient", follows:

I, the undersigned, do consent to give a blood and/or urine specimen. I hereby authorize Metro Health Center to release the results of this testing to the Police Department and/or District Attorney's Office having jurisdiction.

4. Our scope of review in a license suspension case is limited to determining whether findings of fact are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992).

the implied consent law.[5] To sustain a license suspension under Section 1547(b)(1), the Department must prove that the licensee (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension. *Larkin v. Commonwealth,* 109 Pa.Commonwealth Ct. 611, 531 A.2d 844 (1987). Moreover, in *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), our Supreme Court held that after establishing this initial burden, in circumstances where the licensee appears confused as to his or her right to counsel before submitting to a chemical test, in order to establish that the refusal was knowing and conscious:

> where an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

*Id.* at 252, 555 A.2d at 878.

In *Department of Transportation, Bureau of Driver Licensing v. McGarvey,* 136 Pa.Commonwealth Ct. 358, 583 A.2d 39 (1990), we held that an *O'Connell*-type explanation was required even when *Miranda* rights have not been given, but the licensee asks to speak to an attorney or other person prior to the chemical test. We held:

> where, as here, a licensee requests to speak to an attorney, *or anyone else,* prior to taking a chemical test, even though *Miranda* warnings have not been given, it is incumbent upon the police to inform the licensee that he or she does

5. The Licensee also contends that performance of the blood test was conditioned on his signing the consent form which was an impermissible testing prerequisite, and that he was not properly warned that refusal to submit to the blood test would result in a one year suspension of his license. Because of our disposition of this case on the *O'Connell* question, we need not address these issues.

not have the right to consult with an attorney, or anyone else, *and* that a citizen's constitutional rights, although applicable to the criminal charges, do not apply under the implied consent law. (Emphasis added.)

*Id.* at 364, 583 A.2d at 42. The Supreme Court adopted this holding in *Department of Transportation, Bureau of Driver Licensing v. McCann,* 533 Pa. 456, 626 A.2d 92 (1993). *See also Department of Transportation, Bureau of Driver Licensing v. Elko,* 155 Pa.Commonwealth Ct. 24, 624 A.2d 717 (1993), *petition for allowance of appeal denied,* 535 Pa. 670, 634 A.2d 1118 (1993).

When the Licensee asked to speak to his wife, the officer was required to provide an explanation that his constitutional rights relating to the criminal charges did not apply to a refusal under the implied consent law.[6] *McGarvey.* While the officer did explain that the Licensee did not have the right to make a phone call prior to the blood test, he failed to explain why a phone call was not permitted. Furthermore, according to the officer, after the Licensee refused to take the test, he then stated that the Licensee's "license would be suspended for one year in addition to the other sanctions by the Court if he were to be convicted." R.R. at 10. Instead of clearing any confusion the Licensee may have had regarding his rights under the implied consent law and his constitutional rights regarding the criminal charge, the officer's statement served to further link the civil suspension for refusal to submit to the blood test with the underlying criminal charge.

Accordingly, the order of the Court of Common Pleas of Erie County is reversed.

6. The Department contends that because the Licensee testified he agreed to take the test and only asked to phone his wife after it was completed, this is not an *O'Connell* case. As the Department acknowledges elsewhere in its brief, the trial court is the finder of fact and our scope of review is limited to whether such findings are supported by competent evidence. *Danforth.* However, the trial court specifically found that the Licensee conditioned his consent to the blood test on his first being permitted to speak to his wife which is supported by the testimony of the officer.

## ORDER

AND NOW, this 11th day of March, 1994, the order of the Common Pleas Court of Erie County dated April 30, 1992, is reversed.