Holly S. KOLACZYNSKI, Appellant,

v.

COMMONWEALTH of Pennsylvania, DE-PARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 7, 1994.

Decided April 10, 1995.

duction to the actual corpus delicti charge. The court, however, did not include the last sentence of this introductory charge: "I shall now instruct you in more detail about the rules you must follow in dealing with the statement." Pa. SSJI (Crim.) 3.01. Nor did the court then further instruct the jury regarding the Commonwealth's burden of proof relative to corpus delicti.

5. We note that the Pennsylvania standard jury charge on corpus delicti contains the "reasonable doubt" requirement as follows:

1) As I told you, you may not consider the statement as evidence against the defendant unless you find that a crime was committed. In making this preliminary determination you may consider any direct or circumstantial evidence, apart from the statement itself, tending to prove or disprove a crime. This means you must disregard the statement unless you are satisfied beyond a reasonable doubt by the other evidence that an injury or loss occurred and that such injury or loss probably resulted from the commission of the crime of __ by someone. The other evidence need not tend to show that the crime was committed by the defendant, only that the crime was committed by someone. The other evidence need not rule out all possibility of accident, justification or excuse or other non-criminal means. It is enough if you are satisfied beyond a reasonable doubt that the circumstances are more consistent with the injury or loss having resulted from the crime of __ than from other means. 2) The object of these rules is to guard against convicting a person of a crime that never really happened even though he confessed to it. Pennsylvania Suggested Standard Jury Instructions (Criminal), 3.02A, Defendant's Confession or Admission: Corpus Delicti, General (rev. 1985).

Sanford S. Finder, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge, for appellee.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Holly S. Kolaczynski (licensee) appeals an order of the Court of Common Pleas of Washington County (trial court) that sustained the one-year suspension of her vehicle operating privilege pursuant to section 1547(b)(1) of the Vehicle Code [1] for refusal to submit to chemical testing. We reverse.

The facts as found by the trial court are as follows. On April 19, 1993, Officer Michael

---

1. Section 1547(b)(1) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1), provides:

If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

W. Philips of the Cecil Township Police Department observed a Ford Bronco travelling in the wrong lane and crossing back and forth several times over the center line. Philips stopped the vehicle which licensee was driving.

Philips did not observe the odor of alcohol and licensee's eyes were not red. However, licensee appeared confused and when asked to produce her driver's license, she passed it by four times. Licensee was asked to perform several field sobriety tests. Licensee failed the horizontal gaze test; refused to perform the walk and turn test; failed the one-leg stance; counted on her fingers, "1, 3, 5, 8"; and recited the alphabet, "A, B, C, D, F, Q, R, F, D, Z".

Philips placed licensee under arrest for driving under the influence and transported her to the police station. Licensee was advised that she would be taken to the hospital for chemical testing and, if she refused, her driver's license would be suspended for one year. Licensee insisted that she wanted to speak to her husband who was at a nearby ball field. Philips told licensee that she did not have the right to speak to her husband before taking the test and transported her to the hospital for the chemical test.

At the hospital, Philips requested that licensee submit to tests of breath and urine and Philips completed Department of Transportation Form DL–26.[2] Licensee said she wanted to speak to her husband and would take the test after she spoke to him. Again, Philips advised licensee that she did not have the right to speak to her husband or anyone else. Licensee responded "I'm not going to take the test." At no time did she say that she did not understand what was expected of her. Licensee testified that she refused because she hoped Philips would contact her husband.

Licensee was transported back to the police station where she was met by her husband. After speaking to him, licensee said she would go back to the hospital for the chemical test.

Based on these facts, the trial court found that because licensee was not given *Miranda*[3] warnings before she was requested to submit to a chemical test for blood alcohol content, this was not a case involving the kind of per se confusion which occurred in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). Accordingly, based on this court's decisions in *Department of Transportation, Bureau of Driver Licensing v. McGarvey*, 136 Pa.Commonwealth Ct. 358, 583 A.2d 39 (1990) and *Department of Transportation, Bureau of Driver Licensing v. Elko*, 155 Pa.Commonwealth Ct. 24, 624 A.2d 717, *petition for allowance of appeal denied*, 535 Pa. 670, 634 A.2d 1118 (1993), the trial court concluded that Philips provided to licensee an adequate implied consent warning when she asked to speak with her husband.

Accordingly, the trial court sustained the suspension after finding that licensee made a

---

**2.** DOT form DL–26 reads as follows:

1. Please be advised that you are now under arrest for driving under the influence of alcohol or a controlled substance pursuant to section 3731 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of *Blood/Urine* (breath, blood or urine. Officer chooses the chemical test.)

3. It is my duty, as a police officer, to inform you that if you refuse to submit to the chemical test your operating privilege will be suspended for a period of one year.

4. a) The constitutional rights you have as a criminal defendant, commonly known as Miranda Rights, including the right to speak with a lawyer and the right to remain silent, apply only to criminal prosecutions and do not apply to the chemical testing procedure under Pennsylvania's Implied Consent Law, which is a civil, not a criminal proceeding.

b) You have no right to speak to a lawyer, or anyone else, before taking the chemical test requested by the police officer nor do you have a right to remain silent when asked by the police officer to submit to the chemical test. Unless you agree to submit to the test requested by the police officer your conduct will be deemed to be refusal and your operating privilege will be suspended for one year.

c) Your refusal to submit to chemical testing under the Implied Consent Law may be introduced into evidence in a criminal proceeding for driving while under the influence of alcohol or a controlled substance.

(DL–26 (7–92), Original Record, Department of Transportation's Exhibit 1.)

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

knowing and conscious refusal to submit to chemical testing. Licensee now appeals the suspension to this court.[4]

■ Initially, we note that in order to sustain a license suspension under section 1547(b)(1) of the Vehicle Code, DOT must prove that the licensee: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a breathalyzer test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the revocation of his driver's license. *Larkin v. Commonwealth*, 109 Pa.Commonwealth Ct. 611, 531 A.2d 844 (1987). After DOT meets its burden, the licensee is then required to establish that he was not capable of making a knowing and conscious refusal to take the chemical test. *O'Connell.*

In the within matter, it is undisputed that DOT satisfied its burden; therefore, the issue herein is whether licensee knowingly refused to submit to chemical testing.

In *O'Connell*, our Supreme Court set forth the exact information which must be present in an implied consent warning provided to a licensee who asks to speak with an attorney or anyone else after being requested to submit to chemical testing in order for a licensee to knowingly refuse chemical testing. Our Supreme Court held that:

> [W]here an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

*Id.* at 252, 555 A.2d at 878.

■ In *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538

Pa. 236, 648 A.2d 285 (1994) our Supreme Court specifically addressed the issue of what constitutes an adequate *O'Connell* warning where warnings about the applicability of the *Miranda* right to counsel are necessary as: (1) when *Miranda* warnings precede a request to submit to chemical testing, and (2) when a motorist asks to consult with someone prior to deciding to take the test. *Ingram* at 243, 648 A.2d at 290. Our Supreme Court held that:

> [A] proper *O'Connell* warning must include the following information: first, a motorist must be informed that his driving privileges will be suspended for one year if he refuses chemical testing; second, the motorist must be informed that his *Miranda* rights do not apply to chemical testing.

*Id.* at 249, 648 A.2d at 294–95.

In light of the foregoing, it is clear that the controlling law requires that when a licensee asks to speak with anyone, not just his/her lawyer, after being requested to submit to chemical testing, a licensee must be provided with the above *O'Connell* warning.

■ In the present matter, it is undisputed that after her arrest and after she was asked to submit to chemical testing, licensee requested to speak with her husband; therefore, licensee was entitled to a warning informing her that her operating privileges would be suspended for one year if she refused chemical testing, and that her *Miranda* right to counsel did not apply to chemical testing. *Id.*

The record reflects that Philips informed licensee that her license would be suspended for one year if she refused chemical testing and that she did not have the right to speak with her husband prior to chemical testing. The record is, however, devoid of any evidence which indicates that licensee was informed that her *Miranda* right to counsel did not apply to chemical testing. As Philips

---

4. Our scope of review in a license suspension case is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's decision demonstrates a manifest abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Lello*, 132 Pa.Commonwealth Ct. 11, 571 A.2d 562 (1990). Questions of credibility and conflicts in the evidence are for the trial court to resolve. *Department of Transportation, Bureau of Traffic Safety v. Korchak*, 506 Pa. 52, 483 A.2d 1360 (1984). If there is sufficient evidence in the record to support the findings of the trial court we must pay proper deference to it as fact finder and affirm. *Id.*

failed to specifically provide licensee with a proper *O'Connell* warning as set forth in *Ingram,* the implied consent warning provided to licensee was inadequate as a matter of law.

DOT argues that Philips' warning to licensee that she had no right to speak with her husband or anyone else before submitting to the blood test was sufficient, as a matter of law, to satisfy the minimum requirements set forth in *Ingram* by "indirectly" informing licensee that her *Miranda* rights were not applicable to the blood test.[5] We reject this contention.

The whole purpose of the *Ingram* decision was to set forth what constitutes an adequate *O'Connell* warning when it is necessary to warn a licensee about the applicability of the *Miranda* right to counsel. *Ingram* at 243, 648 A.2d at 290. DOT's interpretation of the *Ingram* decision to permit a warning which indirectly informs a licensee of the applicability of the *Miranda* right to counsel only serves to erode the Supreme Court's holding.

This court recognizes that our Supreme Court in *Ingram* did state that the proper *O'Connell* warning, as articulated by the court, was "by no means a mantra that the police must recite like automatons." *Id.* at 249, 648 A.2d at 295. However, the Supreme Court went on to state that "[t]he subject matter, however, should be covered in warnings issued by the police." *Id.*

In the present matter, this court fails to see how the warning given to licensee by Philips covered the subject matter required by the Supreme Court for a proper *O'Connell* warning. The record shows that the only information that Philips gave to licensee, in addition to the fact that her license would be suspended for one year, was that she did not have "the right to talk to her husband." R. at 23a. Philips testified, on cross examination, that he did not advise licensee that

her *Miranda* rights did not apply to her right to take a blood test. R. at 24a.

■ This court's reading of the Supreme Court's decision in *Ingram* for its recitation of a proper *O'Connell* warning reveals that at the very minimum terms that may be associated with the *Miranda* right to counsel, such as "lawyer" or "attorney", must be specifically used to satisfy the second prong of a proper *O'Connell* warning. Otherwise, the whole exercise by our Supreme Court of setting forth what must be included in a proper *O'Connell* warning where warnings about the applicability of the *Miranda* right to counsel are necessary would be rendered futile.

Our conclusion is supported by the Supreme Court's opinion that the warnings provided by DOT form DL–26 satisfy, as a matter of law, the minimum requirements required for a proper *O'Connell* warning. The DL–26 form used by the police, that our Supreme Court in *Ingram* held satisfied, as a matter of law, the *minimum* requirements of a proper *O'Connell* warning, while not specifically mentioning *Miranda,* did inform the licensee that his *Miranda* right to counsel did not apply to chemical testing by stating that "rights to confer with your attorney or anyone else" prior to taking the chemical test did not apply.[6] *Id.* at 243, 648 A.2d at 290. In the present case, Philips did not even use the minimum language of "rights to confer with your attorney or anyone else" but merely informed licensee that she did not have the right to talk with her husband. Such a warning clearly falls short of a proper *O'Connell* warning as it does not adequately cover the subject matter regarding *Miranda* rights required by a proper *O'Connell* warning.

Moreover, we note that in the present case, the DL–26 form completed by Philips was not read to or signed by licensee. The record shows that licensee's signature does not appear on the DL–26 form completed by

---

**5.** DOT's characterization of the warning given to licensee by Philips that she did not have the right to speak to her husband or anyone else is misleading. The record shows that Philips only informed licensee that she did not have the right to speak to her husband. Reproduced Record (R.) at 15a–25a.

**6.** The Supreme Court's decision in *Ingram* concerned two appeals, *Department of Transportation, Bureau of Driver Licensing v. Ingram* and *Department of Transportation, Bureau of Driver Licensing v. Frain.* The Supreme Court's discussion of DOT form DL–26 was with regard to the facts surrounding *Frain.*

Philips and that Philips testified twice before the trial court that he orally informed licensee that her license would be suspended for one year and that he did not read the form to licensee. Philips testimony was as follows:

Q Did you give her the warnings orally, or did you read them from a form?

A I gave them to her orally.

. . . .

Q Did you read these warnings listed in the chemical test warnings to the petitioner?

A Again, I did not read this form to the defendant. I did advise her that her license would be suspended for one year. But, this exact form was not read to the defendant.

R. at 19a; 22a.

Therefore, while the warnings provided on the DL–26 form satisfied, as a matter of law, the minimum requirements for a proper *O'Connell* warning articulated by the Supreme Court in *Ingram*, it is clear from the record in this case that the warnings contained therein were never given to licensee.

Accordingly, we hold that a warning by a police officer that does not directly mention a licensee's *Miranda* right to counsel or terms associated with the *Miranda* right to counsel, such as the terms "lawyer" or "attorney", is insufficient as a matter of law to satisfy the second prong of a proper *O'Connell* warning as set forth in *Ingram*. The order of the Court of Common Pleas of Washington County is reversed.

### ORDER

NOW, this 10th day of April, 1995, the order of the Court of Common Pleas of Washington County, dated March 18, 1994, at No. 93–3268, is reversed.

DOYLE, Judge, concurring.

I concur in the result because, and only because, Justice Montemuro wrote in *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 648 A.2d 285, 294–95 (1994):

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.

Hence, we hold that a proper *O'Connell* warning must include the following information: first, a motorist must be informed that his driving privileges will be suspended for one year if he refuses chemical testing; **second, the motorist must be informed that his *Miranda* rights do not apply to chemical testing.** (Emphasis added.)

Although it is not clear why a citizen's constitutional protections when charged with a crime under the United States Supreme Court's decision in *Miranda*[1] must be explained to a licensee in a civil proceeding under the implied consent provisions of the motor vehicle code, it is abundantly clear that that is what our Supreme Court has insisted must occur; and that was not done in this case. The order of the trial court, therefore, must be reversed.